1    BRUCE C. PIONTKOWSKI (SBN 152202)
     ROPERS, MAJESKI, KOHN & BENTLEY
2    80 North First Street
     San Jose, CA  95113
3    Telephone:     (408) 287-6262
     Facsimile:     (408) 918-4501
4
     THOMAS C. O'KONSKI (BBO 377475)
5    JOHN F. McKENNA (BBO 336220)
     KEVIN GANNON (BBO 640931)
6    CESARI and McKENNA, LLP
     88 Black Falcon Avenue
7    Boston, MA 02210
     Telephone:     (617) 951-2500
8    Facsimile:     (617) 951-3927

9    Attorneys for Defendant
     HEDSTROM CORPORATION and Related Parties
10

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13

14   JUMPSPORT, INC., a California          CASE NO.  C 04-0199-PJH
     corporation,
15                                          **DEFENDANT HEDSTROM
                    Plaintiff,              CORPORATION'S MOTION FOR
16                                          PARTIAL SUMMARY JUDGMENT OF
     v.                                     NON-INFRINGEMENT**
17
     HEDSTROM CORPORATION, a                Honorable Phyllis J. Hamilton
18   Delaware corporation; KMART
     CORPORATION, a Michigan corporation;
19   TARGET CORPORATION, a Minnesota
     corporation; TOYS "R" US-DELAWARE,
20   INC., a Delaware corporation; and DOES 1
     through 100,
21
                    Defendants.
22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

# TABLE OF CONTENTS

**Page**

I.   SUMMARY OF THE ARGUMENT ................................................................1

II.  STATEMENT OF UNDISPUTED FACTS ....................................................2

III. ARGUMENT .............................................................................................8

    A.  The Standard for Summary Judgment ...................................................8

    B.  The Relevant Law Regarding Res Judicata............................................8

    C.  JumpSport's Infringement Claims in This Action Are the Same as Its
        Claims in the First Action .....................................................................9

        1.  Hedstrom's Rights and Interests Established After Nearly Two
            Years of Discovery and a Month-Long Jury Trial in the First Action
            Would be Destroyed By Allowing JumpSport to Renew Its Claims
            in This Action...............................................................................10

        2.  Substantially the Same Evidence Would Be Presented By
            JumpSport in This Action ............................................................11

        3.  This Action Involves Alleged Infringement of the Same Patent
            Rights Asserted in the First Action .............................................12

        4.  This Action Arises Out of the Same Transactional Nucleus of Facts
            as the First Action.......................................................................12

    D.  There Was a Final Judgment on the Merits of JumpSport's Infringement
        Claims in the First Action ...................................................................15

    E.  There Is the Requisite Privity Between the Parties Accused in This Action
        and Those Accused in the First Action .................................................17

    F.  Fundamental Fairness and Other Policy Considerations Also Weigh in
        Favor of Barring JumpSport's Renewed Claims ..................................18

IV.  CONCLUSION ..........................................................................................20

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

SJ/310916.2/LT2

- i -

**DEFENDANT HEDSTROM'S MOTION FOR
PARTIAL SUMMARY JUDGMENT OF NON-
INFRINGEMENT / CASE NO. C 04-0199-PJH**

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) ...................................................................................8

Brown v. Felsen,
    442 U.S. 127 (1979) ...............................................................................8, 18

C.D. Anderson & Co. v. Lemos,
    832 F.2d 1097 (9th Cir. 1987)...................................................................14

Central Delta Water Agency v. United States,
    306 F.3d 938 (9th Cir. 2002)......................................................................10

City of Martinez v. Texaco Trading & Transp., Inc.,
    353 F.3d 758 (9th Cir. 2003)......................................................................17

Convergence Corp. v. Videomedia,
    539 F. Supp. 760 (N.D. Cal. 1981)............................................................16

Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.,
    149 F.3d 1309 (Fed. Cir. 1998)...................................................................8

Federated Dep't Stores v. Moitie,
    452 U.S. 394 (1981) ...................................................................................18

Foster v. Hallco Mfg. Co., Inc.,
    947 F.2d 469 (Fed. Cir. 1991).....................................................................12

General Ry. Signal Co. v. Union Simplex Train Control Co.,
    23 F. Supp. 667 (D.Del. 1938), aff'd, 106 F.2d 1018 (3d Cir. 1939)...............13

In re Jenson,
    980 F.2d 1254 (9th Cir. 1992).......................................................................9

In re Int'l Nutronics, Inc.,
    28 F.3d 965 (9th Cir. 1994)..........................................................................10

In re Schimmels,
    127 F.3d 875 (9th Cir. 1997)........................................................................17

International Union of Operating Eng'rs v. Karr,
    994 F.2d 1426 (9th Cir. 1993)...................................................................9, 12

Kearns v. General Motors Corp.,
    94 F.3d 1553 (Fed. Cir. 1996).............................................................13, 14, 16

Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha,
    58 F.3d 616 (Fed. Cir. 1995) .............................................................8, 13, 15, 17

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

**DEFENDANT HEDSTROM'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT / CASE NO. C 04-0199-PJH**

# TABLE OF AUTHORITIES

**Page**

McClain v. Apodaca,
    793 F.2d 1031 (9th Cir. 1986)..........................................................................8, 14, 18

Montana v. United States,
    440 U.S. 147 (1979) .................................................................................................9

Owens v. Kaiser Foundation Health Plan, Inc.,
    244 F.3d 708 (9th Cir. 2001)...............................................................................9, 15, 17

Panoualias v. National Equip. Co.,
    269 F. 630 (2d Cir. 1920)......................................................................................13

Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.,
    No. 95 CIV 7900 (MBM), 2001 WL. 38285 (S.D.N.Y. Jan. 16, 2001)...........................13

Shaw v. Hahn,
    56 F.3d 1128 (9th Cir.), *cert. denied,* 516 U.S. 964 (1995)...........................................17

Tahoe Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency,
    322 F.3d 1064 (9th Cir. 2003)...............................................................................17

Western Systems, Inc. v. Ulloa,
    958 F.2d 864 (9th Cir. 1992), *cert. denied,* 506 U.S. 1050 (1993) ..................................14

## FEDERAL STATUTES

Fed.R.Civ.P. 41(b) ...............................................................................................2, 15, 16

Fed.R.Civ.P. 56(c)........................................................................................................8

## OTHER AUTHORITIES

Local Rule 3-1 of the Patent Local Rules of the Northern District Court of California .........3, 5, 6

Local Rule 3-7 of the Patent Local Rules of the Northern District Court of California ...........3, 15

Restatement (Second) of Judgments § 24(2) (1982)...................................................13

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

**DEFENDANT HEDSTROM'S MOTION FOR
PARTIAL SUMMARY JUDGMENT OF NON-
INFRINGEMENT / CASE NO. C 04-0199-PJH**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

## MEMORANDUM AND POINTS OF AUTHORITY

Defendant Hedstrom Corporation ("Hedstrom") submits this Memorandum of Points and Authorities in support of its Motion for Partial Summary Judgment of Non-Infringement ("Motion").  This Motion is further supported by the Declaration of Kevin Gannon and the exhibits attached thereto.

## I.     SUMMARY OF THE ARGUMENT

By this action, plaintiff JumpSport, Inc. ("JumpSport") seeks to subject Hedstrom and three of its retail customers to the "double jeopardy" of a second patent infringement proceeding involving trampoline enclosure products that were accused in a prior action by JumpSport in this District (the "First Action"), but as to which no relief was granted.  The JumpSport patents involved in this action are the same as those involved in the First Action.  With the exception of one new trampoline enclosure product model first marketed by Hedstrom after entry of the verdict in the First Action, the accused enclosure products in this action are the same or essentially the same as those involved in the First Action and as to which no relief was granted. JumpSport has admitted that it accused **all** of Hedstrom's then-existing trampoline enclosure products of infringing its two patents in the First Action.  JumpSport has also admitted that it received discovery in the First Action from Hedstrom regarding **all** such enclosure products. JumpSport thus had a full and fair opportunity to litigate its infringement claims against **all** of Hedstrom's then-existing trampoline enclosure products, including particularly its non-JumpGuard brand enclosure products, in the First Action.

For reasons known only to its counsel, JumpSport ultimately limited its Local Rule infringement contentions in the First Action to Hedstrom's JumpGuard brand enclosure products alone.  Because its Local Rule infringement contentions were so limited, the Court entered an order at the outset of trial in the First Action precluding JumpSport from introducing evidence at trial directed to Hedstrom's non-JumpGuard enclosure products.  Up until the entry of that order, JumpSport had the right to seek leave of court to amend its infringement contentions "for good cause shown," to accuse Hedstrom's non-JumpGuard enclosure products as to which it had received discovery.  JumpSport never sought leave to amend for that purpose.  Thus, the Court's

- 1 -            **DEFENDANT HEDSTROM'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT / CASE NO. C 04-0199-PJH**

preclusion order had the effect of dismissing JumpSport's claims against Hedstrom's non-JumpGuard enclosure products from the First Action.  Pursuant to Fed.R.Civ.P. 41(b), that order operated as an adjudication on the merits of JumpSport's infringement claims against Hedstrom's non-JumpGuard products.  Therefore, this action is barred by the claim preclusion aspects of *res judicata*, to the extent that it seeks to implicate any enclosure products made or sold by Hedstrom, or by any of Hedstrom's retail customers, that are the same or essentially the same as the non-JumpGuard enclosure products that Hedstrom made and sold during the pendency of the First Action.

## II.    STATEMENT OF UNDISPUTED FACTS

1.      On December 19, 2001, JumpSport filed a patent infringement action in the United States District Court for the Northern District of California against Hedstrom, Jumpking, Inc., Variflex, Inc., and a number of their retail defendants who sold Hedstrom's and Jumpking's trampoline enclosure products.  That action is captioned *JumpSport, Inc. v. Jumpking, Inc., et al.*, Civil Action No. 01-4986 PJH (the "First Action").  *See* Declaration of Kevin Gannon In Support of Hedstrom Corporation's Motion for Partial Summary Judgment of Non-Infringement ("Gannon Dec."), Exh. A.

2.      At all relevant times both prior to and during the pendency of the First Action, Hedstrom manufactured and sold trampoline enclosure products in two basic forms: (a) combination or so-called unitized trampoline enclosure products, which included both a trampoline and an enclosure; and (b) trampoline enclosure products alone, without a trampoline. Hedstrom used the brand name JumpGuard only in connection with its unitized trampoline enclosure products.  Gannon Dec. ¶ 4.

3.      JumpSport's original Complaint in the First Action alleged that **all** of Hedstrom's trampoline enclosure products, not just Hedstrom's JumpGuard brand trampoline enclosure products, infringed unspecified claims of JumpSport's U.S. Patent Nos. 6,053,845 and 6,261,207 (the "'845 patent" and "'207 patent", respectively).  Gannon Dec., Exh. A.

4.      On April 30, 2002, JumpSport filed its First Amended Complaint in the First Action, and on September 12, 2002, JumpSport filed its Second Amended Complaint in the First

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1   Action.  Both of these pleadings alleged that **all** of Hedstrom's trampoline enclosure products, not

2   just Hedstrom's JumpGuard brand trampoline enclosure products, infringed unspecified claims of

3   the '845 and '207 patents.  Gannon Dec., Exhs. B and C.

4       5.      The parties engaged in almost two years of fact and expert discovery in the First

5   Action related to **all** of Hedstrom's trampoline enclosure products.  *See* Gannon Dec. ¶ 7.

6       6.      Pursuant to the Patent Local Rules of the Northern District of California,

7   specifically Patent Local Rule 3-1, no later than ten (10) days after the Initial Case Management

8   Conference in the First Action, JumpSport was required to serve its Disclosure of Asserted

9   Claims and Preliminary Infringement Contentions ("Infringement Contentions").  Gannon Dec.,

10  Exh. D.  Pursuant to Patent Local Rule 3-1, JumpSport was required to specify by model or other

11  product designation which products of each of the defendants it contended infringe which claims

12  of the patents-in-suit and whether the infringement was literal or under the doctrine of

13  equivalents.  *Id.*

14      7.      Pursuant to Patent Local Rule 3-7, JumpSport had the right to seek leave of court

15  to amend its infringement contentions "for good cause shown."  *Id.*

16      8.      On June 10, 2002, JumpSport complied with this Local Rule requirement by

17  serving its Initial Disclosure of Asserted Claims and Preliminary Infringement Contentions in the

18  First Action.  JumpSport limited its infringement contentions to Hedstrom's JumpGuard

19  enclosure products only.  Gannon Dec., Exh. E.

20      9.      On July 10, 2002, Hedstrom made its first document production in the First

21  Action.  Gannon Dec., Exh. F.  As part of this production, Hedstrom produced assembly manuals

22  for both its JumpGuard and its non-JumpGuard trampoline enclosure products.  Hedstrom also

23  produced financial and sales information for both its JumpGuard and its non-JumpGuard

24  trampoline enclosure products.  Gannon Dec., Exhs. G, H, and I.

25      10.     On July 13, 2002, JumpSport served its Supplemental Disclosure of Asserted

26  Claims and Preliminary Infringement Contentions in the First Action.  Gannon Dec., Exh. J.

27  Again, JumpSport limited its infringement contentions to Hedstrom's JumpGuard enclosure

28  products only.  *Id.*

11.    On July 31, 2002, pursuant to a request to inspect from JumpSport, Hedstrom produced for inspection by JumpSport's counsel at Hedstrom's facility in Bedford, Pennsylvania, physical specimens of ten of its then-existing trampoline enclosure products, only two of which were JumpGuard enclosure products.  Gannon Dec. ¶ 15.

12.    On August 1, 2002, during a deposition of Hedstrom's 30(b)(6) witness, Mr. Frederick Rieber, in the First Action, JumpSport was again apprised, consistent with the product specimens produced for inspection on the previous day, as well as the assembly manuals and other documents produced by Hedstrom on July 10, 2002, that Hedstrom used the name JumpGuard to describe only its unitized trampoline enclosure products and that Hedstrom made and sold non-unitized trampoline enclosure products that did not bear the JumpGuard name. Gannon Dec., Exh. K at 71:13 – 72:10.

13.    On December 18, 2002, JumpSport served its Second Supplemental Disclosure of Asserted Claims and Preliminary Infringement Contentions in the First Action.  Gannon Dec., Exh. L.  Again, JumpSport limited its infringement contentions to Hedstrom's JumpGuard enclosure products only.  *Id.*

14.    Hedstrom's counsel advised JumpSport's counsel that JumpSport's infringement contentions were limited to the Hedstrom's JumpGuard enclosure products during the course of preparing the Joint Set of Proposed Jury Instructions and the Joint Pretrial Statement that were submitted to the Court on October 6, 2003.  Gannon Dec., Exhs. M and N.  These documents clearly reflect Hedstrom's advice and position that JumpSport's infringement contentions were so limited.  *Id.*

15.    Hedstrom's counsel again advised JumpSport's counsel that JumpSport had limited its contentions to the JumpGuard enclosure products only during the course of preparing the Joint Comprehensive List of Allegedly Infringed Claims of U.S. Patent Nos. 6,053,845 and 6,261,207 which was filed on November 2, 2003, the day before the trial in the First Action commenced.  Gannon Dec., Exh. O.  This document also clearly reflects Hedstrom's advice and position in this regard.  *Id.*

16.    Trial in the First Action commenced on November 3, 2003.  Gannon Dec., ¶ 21.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

**DEFENDANT HEDSTROM'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT / CASE NO. C 04-0199-PJH**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

17.     Even though JumpSport knew that its Local Rule Infringement Contentions listed only Hedstrom's JumpGuard enclosure products as infringing its patents, and that it was Hedstrom's position that JumpSport's claims had thus been limited for trial to those products alone, as evidenced by Exhibits M, N and O to the Gannon Dec., JumpSport made no motion for leave to amend its Infringement Contentions at or prior to the commencement of the trial in the First Action on November 3, 2003.  Gannon Dec. ¶ 22.

18.     On the first day of trial, upon the first introduction of evidence, Hedstrom brought to the Court's attention the fact that JumpSport had limited its Infringement Contentions under Patent Local Rule 3-1 to Hedstrom's JumpGuard enclosure products only, even though discovery had been provided on **all** of Hedstrom's enclosure products in the action, and moved to limit the admission of evidence at trial to Hedstrom's JumpGuard enclosure products only.  Gannon Dec., Exh. P, at 9:16 – 12:3.

19.     In oral argument in opposition to Hedstrom's motion to limit the admission of evidence at trial to Hedstrom's JumpGuard enclosure products only, JumpSport's counsel represented in open court that: "All of the discovery, the expert analysis, every issue in this case, has been addressed to all of Hedstrom's enclosures."  Gannon Dec., Exh. P, at 12:8-10.

20.     In oral argument in opposition to Hedstrom's motion to limit the admission of evidence at trial to Hedstrom's JumpGuard enclosure products only, JumpSport's counsel represented in open court that: "The Complaint specifies Hedstrom enclosures, doesn't limit it to JumpGuard."  Gannon Dec., Exh. P, at 12:15-16.

21.     In oral argument in opposition to Hedstrom's motion to limit the admission of evidence at trial to Hedstrom's JumpGuard enclosure products only, JumpSport's counsel represented in open court that: "We've conducted the case as though all enclosures are at issue."  Gannon Dec., Exh. P, at 13:2.

22.     In oral argument in opposition to Hedstrom's motion to limit the admission of evidence at trial to Hedstrom's JumpGuard enclosure products only, JumpSport's counsel represented in open court that: "There was never a question but that we were operating under the understanding that all the Hedstrom units were at issue here.  The testimony is that there is no

- 5 -

substantive difference between the two types of units.  They are essentially the same."  Gannon Dec., Exh. P, at 404:20-25.

23.     In an Order dated November 5, 2003, the Court ruled that JumpSport had indeed limited its infringement contentions under Patent Local Rule 3-1 to Hedstrom's JumpGuard enclosure products, and because of that, JumpSport would not be allowed to introduce evidence at the trial with respect to its infringement claims against Hedstrom's non-JumpGuard enclosure products.  Gannon Dec., Exh. Q.

24.     On November 10, 2003, with the Court's permission, JumpSport filed a letter requesting reconsideration of the Court's November 5, 2003 Order.  Gannon Dec., Exh. R.

25.     In its request for reconsideration, JumpSport represented to the Court that it had accused **all** of Hedstrom's enclosure products in the First Action, and that fact and expert discovery had been provided in the First Action by Hedstrom regarding **all** such enclosure products.  Gannon Dec., Exh. R, at p. 1.

26.     In its request for reconsideration, JumpSport's counsel specifically represented that: "JumpSport's Complaint, amended most recently on September 12, 2002, always alleged that Hedstrom's trampoline enclosure products infringed both patents, without limiting the allegations to just one trampoline enclosure model."  Gannon Dec., Exh. R, at p. 1.

27.     In its request for reconsideration, JumpSport's counsel specifically represented that: "JumpSport's discovery requests were directed to all of Hedstrom's enclosure products.  Hedstrom produced documents relating to all units, not just JumpGuard models, including assembly manuals and sales records."  Gannon Dec., Exh. R, at p. 2.

28.     In its request for reconsideration, JumpSport's counsel further specifically represented that: "Moreover, in July 2002, after the initial disclosures were filed, Hedstrom produced for inspection at its facilities nine trampoline enclosures, of which only two were JumpGuard models."  Gannon Dec., Exh. R, at p. 2.

29.     Hedstrom filed a letter in opposition to JumpSport's request for reconsideration on November 13, 2003.  Gannon Dec., Exh. S.

30.     On November 14, 2003, the Court denied JumpSport's request for reconsideration

- 6 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

from the bench, reiterating that JumpSport would not be allowed to introduce evidence at trial in the First Action regarding its claims against Hedstrom's non-JumpGuard enclosure products. Gannon Dec., Exh. P, at 1212:6 – 1215:3.

31.     Neither the Court's November 5, 2003 Order nor the Court's November 14, 2003 bench ruling specified that the Court's preclusion of evidence relating to JumpSport's claims against the non-JumpGuard enclosure products was without prejudice to their reassertion in a subsequent action or not intended to operate as an adjudication on the merits of such claims. Gannon Dec. ¶ 27.

32.     In its November 14, 2003 bench ruling on JumpSport's request for reconsideration, the Court indicated it probably would have found good cause if JumpSport had filed a motion for leave to amend its infringement contentions when JumpSport first became aware of the limitations therein.  Gannon Dec., Exh. P, at 1214:7-9.

33.     Closing arguments were made and the case was submitted to the jury in the First Action on November 25, 2003.  Gannon Dec. ¶ 28.

34.     On December 5, 2003, the jury in the First Action returned a verdict finding most of the asserted claims of the '845 and '207 patents either invalid or not infringed and that Hedstrom's JumpGuard enclosure products infringed only claims 1, 2, 7, 15 and 17 of the '845 patent, and claims 9 and 10 of the '207 patent.  Gannon Dec., Exh. T.

35.     On January 14, 2004, JumpSport filed this action against Hedstrom, as well as Hedstrom retailers, Wal-Mart Stores, Inc., Kmart Corporation, Target Corporation and Toys 'R Us-Delaware, Inc., again accusing **all** of Hedstrom's enclosure products of infringing unspecified claims of the '845 and '207 patents.  Gannon Dec., Exh. U.

36.     On February 20, 2004, JumpSport filed an Amended Complaint in this action dropping Wal-Mart Stores, Inc. as a defendant.  Gannon Dec., Exh. V.

37.     Final judgment in the First Action was entered on March 18, 2004.  Gannon Dec., Exh. W.

38.     The only trampoline enclosure product that is currently made and sold by Hedstrom that is different in any material respect from the non-JumpGuard enclosure products

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1   that Hedstrom made and sold during the pendency of the First Action is a new trampoline

2   enclosure model called the Kogee Combo Trampoline, Hedstrom product number 103857.

3   Gannon Dec., Exhs. X and Y.

4        39.    Hedstrom first began selling the Kogee Combo Trampoline in 2004, after the jury

5   returned its verdict in the First Action.  Gannon Dec. ¶ 35.

6   **III.   ARGUMENT**

7        **A.    The Standard for Summary Judgment**

8        Summary judgment is appropriate if no genuine issue exists as to any material fact and the

9   moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  In making this

10  determination, the evidence must be viewed in a light most favorable to the nonmoving party and

11  all reasonable inferences must be drawn in favor of that party.  *Ethicon Endo-Surgery, Inc. v.*

12  *United States Surgical Corp.*, 149 F.3d 1309, 1314 (Fed. Cir. 1998).  Under this framework,

13  summary judgment may then be granted if it is determined that no reasonable jury could return a

14  verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

15       As demonstrated below, the undisputed facts establish that JumpSport's infringement

16  claims in this action against the non-JumpGuard enclosure products that were made and sold by

17  Hedstrom during the pendency of the First Action, and Hedstrom's enclosure products that are

18  essentially the same as those products, are barred as a matter of law by the claim preclusion

19  aspects of *res judicata*.

20       **B.    The Relevant Law Regarding *Res Judicata***

21       The claim preclusion aspects of *res judicata* bar **all** grounds for recovery **which could**

22  **have been asserted**, whether they were or not, in a prior action between the same parties on the

23  same cause of action.  *McClain v. Apodaca,* 793 F.2d 1031,1033 (9th Cir. 1986) (emphasis

24  added); *Brown v. Felsen*, 442 U.S. 127, 131 (1979)("*Res judicata* prevents litigation of all

25  grounds for, or defenses to, recovery that were previously available to the parties, regardless of

26  whether they were asserted or determined in the prior proceeding.").  The application of

27  principles of *res judicata* is governed by the law of the regional circuit from which the case arose.

28  *Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 618 (Fed. Cir. 1995).  Thus, the law

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

**DEFENDANT HEDSTROM'S MOTION FOR
PARTIAL SUMMARY JUDGMENT OF NON-
INFRINGEMENT / CASE NO. C 04-0199-PJH**

of the Ninth Circuit applies here.

In order for the claim preclusion aspects of *res judicata* to apply, there must have been "a full and fair opportunity to litigate" the precluded subject matter in the prior action. *Montana v. United States*, 440 U.S. 147, 153 (1979). A final judgment on the merits bars further claims by parties or their privies on the same cause of action. *Id.* "To preclude parties from contesting matters that they had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.*

The doctrine of *res judicata* "is motivated primarily by the interest in avoiding repetitive litigation, conserving judicial resources, and preventing the moral force of court judgments from being undermined." *International Union of Operating Eng'rs v. Karr*, 994 F.2d 1426, 1430 (9th Cir. 1993).

*Res judicata* is applicable whenever there is (1) an identity of claims (cause of action), (2) a final judgment on the merits, and (3) privity between parties. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001). The doctrine of *res judicata* or claim preclusion bars a party from bringing a claim if a court of competent jurisdiction has rendered final judgment on the merits of the claim in a previous action involving the same parties or their privies. *In re Jenson*, 980 F.2d 1254, 1256 (9th Cir. 1992). The preclusive effect of a prior judgment is a question of law. *Id.*

As discussed in detail below, each of these considerations, namely, identity of claims, final judgment and privity, is satisfied here, compelling a finding that JumpSport's claims against Hedstrom's non-JumpGuard enclosure products are barred as a matter of law.

**C.   JumpSport's Infringement Claims in This Action Are the Same as Its Claims in the First Action.**

The Ninth Circuit has established a four-part test to determine whether a suit is based on the same claim or cause of action as an earlier suit. The factors of the test are:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in

- 9 -

the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*In re Int'l Nutronics, Inc.*, 28 F.3d 965, 970 (9th Cir. 1994).  "Weighing of the four factors is not a mathematical exercise, and no single factor is automatically decisive."  *Id.* at 970 n.4.  The Ninth Circuit has stated that "[t]he fourth of the factors, whether the two suits arise out of the same transactional nucleus of facts, is the most important."  *Central Delta Water Agency v. United States*, 306 F.3d 938, 952 (9th Cir. 2002).

All four of the *Nutronics* factors, including particularly the fourth factor, clearly indicate that JumpSport's claims in this action, to the extent that they accuse Hedstrom enclosure products that are identical to, or essentially the same as, *i.e.*, immaterially different from, the non-JumpGuard enclosure products that Hedstrom made and sold during the pendency of the First Action, are identical to JumpSport's claims in the First Action.

> **1.**      **Hedstrom's Rights and Interests Established After Nearly Two Years of Discovery and a Month-Long Jury Trial in the First Action Would be Destroyed By Allowing JumpSport to Renew Its Claims in This Action.**

The first *Nutronics* factor, whether the second suit would impair rights established in the First Action, weighs in favor of a finding of identity of claims.

There can be no dispute that JumpSport had a full and fair opportunity to litigate its patent infringement claims against **all** of Hedstrom's enclosure products in the First Action.  By its own admission, JumpSport initially accused **all** of Hedstrom's trampoline enclosure products, not just Hedstrom's JumpGuard brand enclosure products, of infringing its '845 and '207 patents in the First Action.  By its own admission, JumpSport received fact and expert discovery from Hedstrom in the First Action regarding **all** of Hedstrom's enclosure products.  This Court's November 5, 2004 Order precluded JumpSport from asserting its infringement claims against Hedstrom's non-JumpGuard enclosure products during the trial in the First Action due to JumpSport's failure to include the non-JumpGuard enclosure products in its Local Rule Infringement Contentions.  Allowing JumpSport a second bite at the apple through the maintenance of this action against enclosure products that are identical to, or essentially the same

- 10 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    as, *i.e.*, immaterially different from, the non-JumpGuard enclosure products that Hedstrom made

2    and sold during the pendency of the First Action would be grossly unfair to Hedstrom and

3    effectively destroy the rights Hedstrom established through discovery and trial in the First Action

4    at substantial cost and inconvenience to it.

>    **2.     Substantially the Same Evidence Would Be Presented By**
>            **JumpSport in This Action.**

7        The second *Nutronics* factor, similarity of evidence, also weighs in favor of a finding of

8    claim identity.  A simple review of JumpSport's Amended Complaint in this action makes it clear

9    that JumpSport seeks to recover infringement damages for Hedstrom's manufacture and sale of

10   the non-JumpGuard enclosure products that were the subject of discovery in the First Action.  *See*

11   Gannon Dec., Exh. V, ¶¶ 24-26 and 29.  The discovery documents that Hedstrom would provide

12   in this action regarding these products are the same documents that Hedstrom produced to

13   JumpSport in the First Action.  The evidence regarding the question of whether these products

14   infringe any valid claim of the JumpSport patents would be identical to the evidence that

15   JumpSport would have submitted at trial in the First Action had the Court's November 5, 2003

16   preclusion ruling not been made.

17       Because JumpSport would have the benefit of hindsight if it were allowed to prosecute

18   this action against products that it could have pursued in the First Action, there is no question that

19   it would be in a position in this action to better tailor its presentation of evidence at a second trial.

20   For example, to avoid a repeat of some embarrassing cross examination, JumpSport's technical

21   expert would likely take the time and effort before a second trial to inspect an actual accused

22   Hedstrom enclosure in an assembled condition before he renders his opinion that the assembled

23   product satisfies all of the elements and limitations of asserted claims of the JumpSport patents.

24   Notwithstanding this type of unfair reconditioning of the evidence that JumpSport would benefit

25   from if it is allowed to renew its claims, with the exception of the Kogee model enclosure

26   products, the accused products in the two actions are the same or essentially the same, and the

27   underlying facts regarding the structure and composition of the accused enclosure products are

28   the same or essentially the same.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

**DEFENDANT HEDSTROM'S MOTION FOR
PARTIAL SUMMARY JUDGMENT OF NON-
INFRINGEMENT / CASE NO. C 04-0199-PJH**

**3.     This Action Involves Alleged Infringement of the Same Patent Rights Asserted in the First Action.**

The third *Nutronics* factor, identity of the rights infringed, also weighs heavily in favor of a finding of claim identity.  In this action, JumpSport alleges that Hedstrom's non-JumpGuard enclosure products infringe unspecified claims of the '845 and '207 patents.  *See* Gannon Dec., Exh. V, ¶¶ 24-26 and 29.  In the First Action, JumpSport initially alleged that **all** of Hedstrom's trampoline enclosure products infringed the '845 and '207 patents, without initially specifying the particular claims of the patents that were infringed.  This action thus involves alleged infringement of the very same patent rights that were or could have been asserted in the First Action.

**4.     This Action Arises Out of the Same Transactional Nucleus of Facts as the First Action.**

The fourth and most important *Nutronics* factor, whether the actions arise out of the same transactional nucleus of facts, also weighs heavily in favor of a finding of claim identity.

"Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *International Union of Operating Eng'rs v. Karr*, 994 F.2d 1426, 1429 (9th Cir. 1993).

The Federal Circuit has defined a cause of action in the patent context as "a suit on the same device alleged to infringe the same patent."  *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 476 (Fed. Cir. 1991).  In *Foster*, the Federal Circuit reasoned that the relevant inquiry in applying *res judicata* principles is whether the claim of infringement in the second action is identical to that in the first action.  *Id.* at 478-79.  Thus, according to the Federal Circuit in *Foster*, "[i]t follows that for claim preclusion to apply [where as here the same patents underlie both lawsuits], the devices in the two suits must be essentially the same."  *Id.* at 479-80.  A subsequent patent infringement claim is the "same" as a prior claim if the devices in the two suits are immaterially different.  *Id.*

Here, with the exception of the Kogee enclosure recently offered for sale by Hedstrom, the products at issue in this action are identical to, or essentially the same as, *i.e.*, immaterially

- 12 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1   different from, the non-JumpGuard enclosure products that were made and sold by Hedstrom

2   during the pendency of the First Action and that were, at least initially by JumpSport's own

3   admission, part of the First Action.  Thus, the "transactional nucleus of facts" underlying

4   JumpSport's infringement claim in this action as to all accused products except the Kogee

5   enclosure is the same as the "transactional nucleus of facts" underlying JumpSport's infringement

6   claim in the First Action.

7           It is well established that a party may not split a cause of action into separate grounds of

8   recovery and raise the separate grounds in successive lawsuits; instead, a party must raise in a

9   single lawsuit all the grounds of recovery arising from a single transaction or series of

10   transactions that can be brought together.  *Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58

11   F.3d 616, 619 (Fed. Cir. 1995) (*citing* Restatement (Second) of Judgments § 24(2) (1982)) (all

12   actions arising from the same transaction or series of transactions are regarded as constituting a

13   single cause of action).

14           Courts have consistently held that a plaintiff is barred from asserting a patent in a

15   subsequent action against products or processes if that patent could have been asserted in the prior

16   action.  *See, e.g., Kearns v. General Motors Corp.*, 94 F.3d 1553, 1555 (Fed. Cir. 1996) (barring

17   plaintiff from bringing subsequent action on patents asserted in a previous action where the

18   previous action was involuntarily dismissed due to plaintiff's failure to comply with court ordered

19   deadlines); *General Ry. Signal Co. v. Union Simplex Train Control Co.*, 23 F. Supp. 667, 671

20   (D.Del. 1938), *aff'd,* 106 F.2d 1018 (3d Cir. 1939) (prohibiting plaintiff from pursuing in a

21   second infringement action patent claims that could have been brought in the first infringement

22   action); *Panoualias v. National Equip. Co.*, 269 F. 630, 632-33 (2d Cir. 1920) ("To permit a

23   patentee who has established his patent in a suit for one infringement to go on bringing separate

24   suits against the same defendant for each separate act of infringement would be a gross injustice,

25   and in violation of those fundamental principles of law that it is a matter of public interest that

26   litigation be terminated, and that judgments are, as a general rule, conclusive as to all facts which

27   have been or which might have been litigated between the parties in the original suit"); *Rocket*

28   *Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, No. 95 CIV 7900 (MBM), 2001 WL. 38285 at *1

**DEFENDANT HEDSTROM'S MOTION FOR
PARTIAL SUMMARY JUDGMENT OF NON-
INFRINGEMENT / CASE NO. C 04-0199-PJH**

(S.D.N.Y. Jan. 16, 2001) (dismissing claims against two defendants where plaintiff had previously sued those defendants on same patents).

A plaintiff may be barred from asserting an infringement claim based on particular patents in a subsequent action even if it was not permitted to assert those particular patents in the first action due to its own dilatory conduct. *See Kearns,* 94 F.3d at 1555 (barring plaintiff from bringing a subsequent suit on patents against the same infringer where those patents were part of a previous lawsuit that was involuntarily dismissed due to plaintiff's "inadequate compliance with the court's orders and deadlines").

In an analogous context, the Ninth Circuit has held that claims based on a breach of the same contract should be brought in the same action so long as the alleged breaches antedate the original action. *McClain v. Apodaca,* 793 F.2d 1031,1034 (9th Cir. 1986)(holding plaintiff's action for breach of contract was barred under doctrine of *res judicata* because the breach arose prior to filing of original action for breach of contract).

The Ninth Circuit has also often applied the doctrine of *res judicata* to bar a second action on the ground that the claims in the second action arose out of the same transaction as those asserted in a prior action, without addressing the other *Nutronics* factors. *C.D. Anderson & Co. v. Lemos*, 832 F.2d 1097, 1100 (9th Cir. 1987)(without addressing the other factors, the second claim was found to be barred by *res judicata* solely on the ground that it arose out of the "same transactional nucleus of facts" as the original suit); *Western Systems, Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992), *cert. denied,* 506 U.S. 1050 (1993) (holding that "[t]he test for whether a subsequent action is barred is whether it arises from the same transaction, or series of transactions as the original action").

Because the claims in this action clearly arise out of the same "transactional nucleus of facts" as those asserted in the First Action, at least as they relate to Hedstrom's enclosure products other than the Kogee model enclosure, the claims in this action are identical to those asserted by JumpSport in the First Action.

/ / /

/ / /

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

**D.      There Was a Final Judgment on the Merits of JumpSport's Infringement Claims in the First Action.**

The second relevant consideration in applying the doctrine of *res judicata* is whether a final judgment on the merits was entered in the First Action.  *Owens*, 244 F.3d at 713.

Final judgment in the First Action was entered on March 18, 2004.  Gannon Dec., Exh. W.  *See Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616 (Fed. Cir. 1995)(claim preclusion barred separate infringement action against Japanese parent corporation after plaintiff had obtained final judgment against its wholly owned American subsidiary).

As previously noted, and as JumpSport has readily conceded, the First Action, at least initially, implicated **all** of Hedstrom's then-existing enclosure products.  Discovery was provided regarding **all** such products.  Even though JumpSport later limited its Local Rule Infringement Contentions to Hedstrom's JumpGuard enclosure products only, JumpSport had the right to seek leave of court to amend its Infringement Contentions "for good cause shown" under the Local Rules.  *See* Gannon Dec., Exh. D at Patent Local Rule 3-7.  In its November 14, 2003 bench ruling on JumpSport's request for reconsideration, the Court in fact indicated it probably would have found good cause if JumpSport had filed a motion for leave to amend its infringement contentions when JumpSport first became aware of the limitations therein.  Gannon Dec., Exh. P, at 1214:7-9.  No such motion to amend was filed by JumpSport until after the Court's November 5, 2003 Order.  Given JumpSport's subsisting right to amend "for good cause shown," JumpSport's claims against Hedstrom's non-JumpGuard enclosure products were not technically dismissed from the First Action until the Court issued its November 5, 2003 Order.  Clearly, that dismissal was involuntary, given JumpSport's strenuous opposition to the Order.

Fed.R.Civ.P. 41(b), provides, in pertinent part:

> For failure of the plaintiff to … comply with these rules or any order of court, a defendant may move for dismissal of … any claim against the defendant.  Unless the court in its order for dismissal otherwise specifies, **a dismissal under this subdivision and any dismissal not provided for in this rule … operates as an adjudication upon the merits.**

Fed.R.Civ.P. 41(b)(emphasis added).

1    Hedstrom's oral motion of November 3, 2003 to limit the admission of evidence at trial to

2    Hedstrom's JumpGuard enclosure products only was, for all intents and purposes and in

3    substance, a motion to dismiss JumpSport's claims against Hedstrom's non-JumpGuard enclosure

4    products.  The Court's November 5, 2003 Order was, for all intents and purposes and in

5    substance, a dismissal of JumpSport's claims against Hedstrom's non-JumpGuard enclosure

6    products.  Pursuant to Fed.R.Civ.P. 41(b), an involuntary dismissal is deemed to be an

7    adjudication on the merits of the claims dismissed unless the court specifies otherwise in its order

8    of dismissal.  *See, e.g., Kearns,* 94 F.3d at 1555 (dismissed on procedural grounds, failure to

9    follow court orders and local rules).  Nowhere in its November 5, 2003 Order or in its November

10   14, 2003 bench ruling on JumpSport's request for reconsideration did the Court specify that its

11   dismissal of JumpSport's claims against the non-JumpGuard products was without prejudice or

12   with the understanding that they could be brought in a later action.[1]

13   The dismissal of JumpSport's infringement claims against Hedstrom's non-JumpGuard

14   enclosure products also does not fall within any of the exceptions to Fed.R.Civ.P. 41(b).  Thus,

15   the Court's November 5, 2003 Order dismissing JumpSport's infringement claims against

16   Hedstrom's non-JumpGuard enclosure products operated as an adjudication on the merits of these

17   claims.

18   It is well settled that the pendency or possibility of an appeal has no effect on the finality

19   of a trial court's holding for purposes of *res judicata*.  *Convergence Corp. v. Videomedia*, 539 F.

20   Supp. 760, 762 (N.D. Cal. 1981).  Therefore, the fact that various post-trial motions are pending

21   in the First Action and that an appeal to the United States Court of Appeals for the Federal Circuit

22   is likely no matter how those post-trial motions are resolved, does not preclude the judgment

23   entered in the First Action from being considered "final" for purposes of applying the doctrine of

24   *res judicata*.

25   _____

26   [1]  In its opposition to this Motion, JumpSport will likely argue that the Court's November 5, 2003 Order was not
     justified under the circumstances or that the Court did not intend it to operate as a dismissal with prejudice.
27   However, JumpSport is not entitled to a "third bite at the apple" in regard to either the merits or the wording of the
     Court's November 5, 2003 Order, particularly at this stage of the proceedings in the First Action.  The November 5,
28   2003 Order stands as issued by the Court for purposes of this Motion, subject only to JumpSport's right to argue on
     appeal that it was an abuse of discretion.

**DEFENDANT HEDSTROM'S MOTION FOR
PARTIAL SUMMARY JUDGMENT OF NON-
INFRINGEMENT / CASE NO. C 04-0199-PJH**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

**E.      There Is the Requisite Privity Between the Parties Accused in This Action and Those Accused in the First Action.**

The third relevant consideration in a *res judicata* analysis is the privity of the parties in the two actions. *Owens*, 244 F.3d at 713.

Hedstrom and Kmart Corporation, named as defendants in this action, were also named as defendants in the First Action. Clearly, the privity consideration is satisfied as to these parties. Two Hedstrom retail customers, Target Corporation and Toys 'R Us – Delaware, Inc., are named as defendants in this action and were not named in the First Action. As discussed below, this fact does not mean that privity no longer exists.

Generally speaking, courts consider parties to be in privity when their interests "are so closely aligned as to be virtually representative." *Tahoe Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1082 (9th Cir. 2003). Privity focuses on the question of whether the relationship between the parties is such that one party should enjoy the benefit or suffer the burden of a judgment for or against another. *Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995).

California courts apply privity where "the nonparty has an identity of interest with, and adequate representation by, the party in the first action and the nonparty should reasonably expect to be bound by the prior adjudication." *City of Martinez v. Texaco Trading & Transp., Inc.*, 353 F.3d 758, 764 (9th Cir. 2003).

Privity between parties exists when a party is "so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997)(citations omitted); *Shaw v. Hahn*, 56 F.3d 1128, 1131-32 (9th Cir.), *cert. denied,* 516 U.S. 964 (1995)(finding privity when the interests of the party in the subsequent action were shared with and adequately represented by the party in the former action).

For these reasons, the requisite privity of parties exists in this action notwithstanding the fact that JumpSport has chosen to sue two new retail customers of Hedstrom's accused enclosure products that it did not sue in the First Action. The retail customer defendants' liability for

infringement is based upon their sale of enclosure products manufactured by Hedstrom and sold to them by Hedstrom. Hedstrom has an obligation to indemnify and defend those retail customer defendants, and is in fact defending them, in both the First Action and this action. JumpSport is not entitled to recover double damages for any infringement that may be found in the actions, based first on the sale of an infringing enclosure by Hedstrom to the retail customer defendant and then on the subsequent resale of the infringing enclosure by the retail customer defendant to a member of the public. Clearly, Hedstrom's and the newly named retail customer defendants' interests in these actions are so closely aligned as to be virtually identical.

## F. Fundamental Fairness and Other Policy Considerations Also Weigh in Favor of Barring JumpSport's Renewed Claims.

The policy underlying the doctrine of *res judicata* also speaks strongly in favor of the bar requested by this Motion. "*Res judicata* ensures the finality of decisions, encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Brown v. Felsen*, 442 U.S. 127, 131 (1979)(citations omitted). The Supreme Court has also emphasized that courts should not hesitate to apply the principle, despite what may appear to be harsh results: "The predicament in which respondent finds himself is of his own making . . . [W]e cannot be expected, for his sole relief, to upset the general and well-established doctrine of *res judicata*, conceived in the light of the maxim that the interest of the state requires that there be an end to litigation - a maxim which comports with common sense as well as public policy." *Federated Dep't Stores v. Moitie*, 452 U.S 394, 401-02 (1981)(internal quotations omitted). "A plaintiff cannot avoid the bar of *res judicata* merely by alleging conduct by the defendant not alleged in the prior action or by pleading a new legal theory." *McClain,* 793 F.2d at 1034. The doctrine of *res judicata* insures the finality of decisions, conserves judicial resources, and protects litigants from multiple lawsuits. *Id.* at 1033.

By being forced to litigate the First Action in California, Hedstrom has incurred substantial expense and disruption to its business. As matters stand now, nearly two and a half years after the First Action was commenced, Hedstrom still does not know with any certainty whether it can continue to manufacture and sell its non-JumpGuard enclosure products without

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1  concern for incurring infringement liability to JumpSport based on what Hedstrom truly believes

2  are, and will ultimately be found to be, invalid and unenforceable patents.  Hedstrom's customers

3  have almost unanimously expressed concern about purchasing enclosure products from Hedstrom

4  because of the pendency of these actions.  Hedstrom is required to allay these concerns by

5  defending its customers and giving them full indemnification commitments.

6  　　　　　To the extent that the relative unfairness and prejudice to the parties is a relevant

7  consideration on this Motion, that balance tips decidedly in Hedstrom's favor.  Hedstrom

8  willingly provided JumpSport with discovery relating to **all** of Hedstrom's enclosure products in

9  the First Action.  That discovery made it plain that Hedstrom used the brand name JumpGuard

10  only in connection with its unitized enclosure products.  Notwithstanding what was evident from

11  the discovery, JumpSport limited its Local Rule Infringement Contentions to Hedstrom's

12  JumpGuard enclosure products.  Additionally and perhaps more importantly, **Hedstrom's**

13  **counsel advised JumpSport's counsel on at least three separate occasions prior to the start**

14  **of trial in the First Action that JumpSport's infringement contentions were limited to**

15  **Hedstrom's JumpGuard enclosure products.**  For reasons known only to JumpSport and its

16  counsel, JumpSport ignored that advice and chose not to seek leave to amend its contentions on a

17  timely basis.  The predicament in which JumpSport finds itself is of its own making.  It would be

18  grossly unfair to Hedstrom to require it to again defend itself and its retail customers based on

19  accused products that not only could have been, but also were in fact part of the proceedings in

20  the First Action.

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

SJ/310916.2/LT2

- 19 -

DEFENDANT HEDSTROM'S MOTION FOR
PARTIAL SUMMARY JUDGMENT OF NON-
INFRINGEMENT / CASE NO. C 04-0199-PJH

1

**IV.**    **CONCLUSION**

2          For all of the reasons set forth above, Hedstrom's Motion for Partial Summary Judgment

3   of Non-infringement should be granted.

4   Dated:  July 30, 2004                        Respectfully submitted,

5                                                Cesari and McKenna, LLP
                                                 THOMAS C. O'KONSKI
6                                                KEVIN GANNON

7
                                                 Ropers, Majeski, Kohn & Bentley
8                                                BRUCE C. PIONTKOWSKI

9
                                                 By:   /s/ Bruce C. Piontkowski
10                                                     BRUCE C. PIONTKOWSKI
                                                       Attorneys for Defendant / Counterclaimant
11                                                     Hedstrom Corporation

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT HEDSTROM'S MOTION FOR
PARTIAL SUMMARY JUDGMENT OF NON-
INFRINGEMENT / CASE NO. C 04-0199-PJH**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose