1   TOWNSEND AND TOWNSEND AND CREW LLP
    PETER H. GOLDSMITH (State Bar No. 91294))
2   CHRISTINE A. AMATRUDA (State Bar No. 111244)
    Two Embarcadero Center, Eighth Floor
3   San Francisco, California  94111
    Telephone: (415) 576-0200
4   Facsimile: (415) 576-0300

5   Attorneys for  Plaintiff
    JUMPSPORT, INC.

6

7

8                    UNITED STATES DISTRICT COURT

9                 FOR THE  DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11  JUMPSPORT, INC., a California corporation,        Case No.    C 04-0199-PJH

12                    Plaintiff,                      **PLAINTIFF JUMPSPORT, INC.'S**
                                                      **MEMORANDUM OF POINTS AND**
13          v.                                        **AUTHORITIES IN OPPOSITION TO**
                                                      **DEFENDANTS' MOTION FOR**
14  HEDSTROM CORPORATION, a Delaware                  **PARTIAL SUMMARY JUDGMENT**
    corporation; KMART CORPORATION, a
15  Michigan corporation; TARGET                      Honorable Phyllis J. Hamilton
    CORPORATION, a Minnesota corporation;
16  TOYS "R" US-DELAWARE, INC., a Delaware
    corporation; and DOES 1 through 100,
17
                    Defendants.
18                                                    Complaint Filed:  January 14, 2004

19

20

21

22

23

24

25

26

27

28

Pl's Memo. of Pts. & Auth. In Oppos. to Defs'              *JumpSport, Inc. v. Hedstrom Corp., et al.*
Mot. for Partial Summary Judgment                          Case No. C 04-0199 PJH

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ...................................................................................................... 1

II.   STATEMENT OF RELEVANT FACTS AND PROCEEDINGS ................................. 1

    A.   The Complaint And The Disclosure Of Asserted Claims. .................................. 1

    B.   Hedstrom Has Two Different Sets Of Products. ................................................. 2

    C.   Pretrial Discovery In The JumpGuard Action. .................................................. 3

    D.   Pretrial Submissions In The JumpGuard Action. ............................................... 3

    E.   Hedstrom's Request To Limit The Trial To JumpGuard Enclosures. ................. 4

    F.   The Trial, Verdict And Permanent Injunction In The JumpGuard
        Action. ............................................................................................................. 6

    G.   The Second Infringement Action. ..................................................................... 7

    H.   Defendants' Continuing Infringement. .............................................................. 7

III.   ARGUMENT ............................................................................................................. 8

    A.   Under Federal Circuit Law, Claim Preclusion Does Not Apply To Bar
        JumpSport's Claims Because The Two Actions Involve Different
        Devices. ............................................................................................................ 8

        1.   Legal Standard. ...................................................................................... 8

        2.   The JumpGuard Action And This Action Involve Different
            Devices. ............................................................................................... 11

        3.   JumpSport's Attempt To Include The Non-JumpGuard
            Enclosure In The First Action Does Not Alter The Claim
            Preclusion Analysis. ............................................................................. 11

        4.   Hedstrom's Authorities Do Not Support The Application Of
            Claim Preclusion Here .......................................................................... 14

    B.   Under The Factors Applied In The Ninth Circuit This Action States A
        Different Cause Of Action ................................................................................ 15

        1.   The Rights And Interests Established In The Prior Action Will
            Not Be Impaired Or Destroyed By The Second Action. ........................ 15

        2.   Substantially The Same Evidence Will Not Be Presented In
            The Two Actions. ................................................................................. 16

        3.   The Two Actions Only Partially Involve Infringement Of The
            Same Right. .......................................................................................... 16

60272910

Pl's Memo. of Pts. & Auth. In Oppos. to Defs'
Mot. for Partial Summary Judgment

*JumpSport, Inc. v. Hedstrom Corp., et al.*
Case No. C 04-0199 PJH

- i -

1

**TABLE OF CONTENTS(con't)**

2

Page

3

4.   This Action Does Not Arise From The Same Transactional
Nucleus Of Facts As The JumpGuard Action. ....................................... 17

4

C.   The Final Judgment In The JumpGuard Action Was Not An
Involuntary Dismissal With Prejudice.................................................. 18

5

6

D.   Essential Fairness, Important Policy Considerations, And Judicial
Estoppel Support JumpSport To Proceed With Its Patent Infringement
Claims.................................................................................................. 19

7

8

E.   Defendants Target, Toys "R" Us And Kmart Were Not Parties Or In
Privity With Hedstrom. ...................................................................... 22

9

F.   Defendants' Post-Judgment Infringement Creates A New Cause Of
Action. .............................................................................................. 23

10

11

IV.   CONCLUSION ............................................................................................ 25

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pl's Memo. of Pts. & Auth. In Oppos. to Defs'
60272910   Mot. for Partial Summary Judgment            ii

*JumpSport, Inc. v. Hedstrom Corp., et al.*
Case No. C 04-0199 PJH

1

# TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*American Chem. Paint Co. v. Thompson Chem. Corp.*,
244 F.2d 64 (9th Cir. 1957) ................................................................ 9

5

*Atmel Corp. v. Information Storage Devices, Inc.*
1998 U.S. Dist. LEXIS 17564 (N.D. Cal. Nov. 4, 1998) ................................ 12

6

*Auto Acetylene Light Co. v. Prest-O-Lite Co.*,
264 F. 810 (6th Cir. 1920) ................................................................ 25

7

8

*Brown v. Felsen,*
442 U.S. 127 (1979) ................................................................ 9

9

*C.D. Anderson & Co. v. Lemos*,
832 F.2d 1097 (9th Cir. 1987) ................................................................ 17

10

11

*Del Mar Avionics, Inc. v. Quinton Instrument Co.,*
836 F.2d 1320 (Fed. Cir. 1987) ................................................................ 10

12

*Delew v. Wagner,*
143 F.3d 1219 (9th Cir. 1998) ................................................................ 14

13

14

*Foster v. Hallco Mfg. Co.,*
947 F.2d 469 (Fed. Cir. 1991) ................................................................ 9, 11

15

*Frank v. United Airlines, Inc.,*
216 F.3d 845 (9th Cir. 2000) ................................................................ 24

16

17

*Galindo v. Stoody Co.*,
793 F.2d 1502 (9th Cir. 1986) ................................................................ 13

18

*General R. Signal Co. v. Union Simplex Train Control Co.,*
23 F. Supp. 667 (D. Del. 1938) ................................................................ 15

19

20

*Hamilton v. State Farm Fire & Casualty Co.,*
270 F.3d 778 (9th Cir. 2001) ................................................................ 1, 21

21

*Herbert Rosenthal Jewelry Corp. v. Zale Corp.,*
323 F. Supp. 1234 (S.D.N.Y. 1971) ................................................................ 23

22

23

*Integrated Circuit Systems, Inc. v. Realtek Semiconductor Co.,*
308 F. Supp. 2d 1106 (N.D. Cal. 2004) ................................................................ 13

24

*International Techs. Consultants, Inc. v. Pilkington, PLC,*
137 F.3d 1382 (9th Cir. 1998) ................................................................ 24

25

26

*Kearns v. GMC,*
94 F.3d 1553 (Fed. Cir. 1996) ................................................................ 9, 14, 17

27

28

Pl's Memo. of Pts. & Auth. In Oppos. to Defs'
Mot. for Partial Summary Judgment

*JumpSport, Inc. v. Hedstrom Corp., et al.*
Case No. C 04-0199 PJH

1

**TABLE OF AUTHORITIES (con't)**

2

Page

3

*Lawlor v. National Screen Service Corp.*,
349 U.S. 322 (1955) ................................................................................... 20, 24

4

*LG Electronics Inc. v. Q-Lity Computer, Inc.*,
211 F.R.D. 360 (N.D. Cal. 2002) ........................................................................ 13

5

6

*Mars v. Nippon Conlux Kabushiki-Kaisha*,
58 F.3d 616 (Fed. Cir. 1995) ...................................................................... 9, 14, 23

7

*McClain v. Apodaca*,
793 F.2d 1031 (9th Cir. 1986) ............................................................................ 17

8

9

*Network Caching Tech., LLC v. Novell, Inc.*,
2003 U.S. Dist. LEXIS 9881 (N.D. Cal. 2003) ................................................... 19

10

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ...................................................................................... 12, 21

11

12

*Panoualias v. National Equipment Co.*
269 F. 630 (2d Cir. 1920) ................................................................................... 14

13

*Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*,
170 F.3d 1373 (Fed. Cir. 1999) .......................................................................... 18

14

15

*Rocket Jewelry Box., Inc. v. Noble Gift Packaging, Inc.*,
2001 WL 38285 (S.D.N.Y. 2001) ....................................................................... 15

16

17

*SciMed Life Systems v. Advanced Cardiovascular Systems, Inc.*,
1999 U.S. Dist. LEXIS 21494, 51 U.S.P.Q.2d (BNA) 1221 (N.D. Cal. May 17,
1999) ...................................................................................................................... 9

18

*Sidhu v. The Flecto Co.*,
79 F.3d 896 (9th Cir. 2002) ................................................................................. 9

19

20

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
322 F.3d 1064 (9th Cir. 2003) ............................................................................ 23

21

*The Singer Co. v. Skil Corp.*,
803 F.2d 336 (7th Cir. 1986) .............................................................................. 24

22

23

*Unique Coupons, Inc. v. Northfield Corp.*,
2000 U.S. Dist. LEXIS 5859 (N.D. Ill. Mar. 30, 2000) ...................................... 10

24

*Weatherchem Corp. v. J.L. Clark, Inc.*,
163 F.3d 1326 (Fed. Cir. 1998) .......................................................................... 11

25

26

*Western Sys. v. Ulloa*,
958 F.2d 864 (9th Cir. 1992) .............................................................................. 17

27

*Williams v. Gillette Co.*,
887 F. Supp. 181 (N.D. Ill. 1995) ....................................................................... 24

28

Pl's Memo. of Pts. & Auth. In Oppos. to Defs'
60272910   Mot. for Partial Summary Judgment          iv

*JumpSport, Inc. v. Hedstrom Corp., et al.*
Case No. C 04-0199 PJH

**TABLE OF AUTHORITIES (con't)**

Page

*Young Engineers, Inc. v. U.S.I.T.C.,*
     721 F.2d 1305 (Fed. Cir. 1983) ................................................................. 10, 11

*Yourish v. California Amplifier,*
     191 F.3d 983 (9th Cir. 1999) ........................................................................ 19

*Zaroff v. Holmes,*
     27 U.S. App. D.C. 1 (D.C. Cir. 1967) .......................................................... 19

*Zip Dee, Inc. v. Dometic Corp.,*
     886 F. Supp. 1427 (N.D. Ill. 1995) ............................................................ 9, 25

**Statutes**

11 U.S.C. § 362 ...................................................................................................... 22

**Other Authorities**

18 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 4412 .................................... 14

8 CHISUM ON PATENTS § 21.03[3] ......................................................................... 22

8 CHISUM ON PATENTS § 21.03[3][e] ..................................................................... 22

8 CHISUM ON PATENTS at §20.03[7][b] .................................................................. 23

8 CHISUM ON PATENTS at ¶21.03[3][e] .................................................................. 17

RESTATEMENT (SECOND) OF JUDGMENTS, § 26, cmt. (c) ............................................... 13

**Rules**

Fed. R. Civ. P. Rule 15 ........................................................................................... 13

Fed. R. Civ. P. Rule 41(b) ...................................................................................... 18

Fed. R. Civ. P. Rule 56(c) ...................................................................................... 23

1   **I.      INTRODUCTION**

2          When Hedstrom opposed JumpSport's motion for reconsideration of the Court's decision to

3   limit JumpSport's claims to the JumpGuard enclosures, Hedstrom told the Court in no uncertain terms

4   that by denying the motion "**there will be no prejudice to JumpSport**."  If JumpSport lost the trial,

5   Hedstrom reasoned, "there will be no need for a second action" and if JumpSport won, "the major

6   obstacle to settlement will be removed and it is likely that resolution will be reached by agreement."

7   Hedstrom, however, now seeks the ultimate prejudice -- precluding JumpSport from pursuing any

8   claims against Hedstrom's non-JumpGuard enclosures, which constitute well over 90% of the

9   enclosures Hedstrom sold, and the ultimate windfall, a free pass to infringe JumpSport's patents in the

10  future by selling the non-JumpGuard enclosures.

11         Hedstrom's legal arguments are wrong, both as a matter of law and fundamental fairness.

12  First, the Federal Circuit has held that claim preclusion does not bar a second infringement action

13  where, as here, it is directed to different models, because infringement claims against non-identical

14  devices constitute different causes of action.   Second, the Supreme Court and lower courts have

15  consistently held that a plaintiff may recover in a new action for post-judgment harm, such as patent

16  infringement, even if the same infringing models were the subject of the prior judgment, because the

17  new acts of infringement create a new cause of action.   Moreover, Hedstrom's argument that the

18  Court's order limiting JumpSport to proceeding at trial against only the JumpGuard models was an

19  "involuntary dismissal with prejudice" is not consistent with the record, or the law governing such

20  dismissals.  Nor has Hedstrom met its burden of establishing that the retailer Defendants are in privity

21  with Hedstrom.  Finally, even if the claim preclusion doctrine could be applied in this case, principles

22  of basic fairness and judicial estoppel compel a different result.  Courts apply the harsh result of claim

23  preclusion with "cautious restraint," particularly in cases where, as in this case, the preclusion arises

24  from a procedural barrier or there exist other special circumstances.  All of these factors compel the

25  denial of Hedstrom's motion.

26  **II.     STATEMENT OF RELEVANT FACTS AND PROCEEDINGS**

27         **A.      The Complaint And The Disclosure Of Asserted Claims.**

28  On December 19, 2001, JumpSport filed a patent infringement action in this Court against

1   Hedstrom and other manufacturer and retailer Defendants, alleging that the trampoline enclosures they

2   manufactured and sold infringed the claims of JumpSport's patents, U.S. Patent Nos. 6,053,845 and

3   6,261,207 ("the JumpSport patents").  That action was titled *JumpSport, Inc. v. Jumpking, Inc., et al.*,

4   Civil Action No. C 01-4986 PJH (hereinafter "the JumpGuard action").  In the complaint, JumpSport

5   alleged that Hedstrom -- and four retailer Defendants that sold Hedstrom products (Wal-Mart Stores,

6   Inc., Kmart, Amway Corporation and Hammacher Schlemmer & Co., Inc.) -- infringed JumpSport's

7   patents through the manufacture and sale of trampoline enclosures.  (*See* JumpSport's Complaint at ¶¶

8   7, 9, 10, 13, 25, 26 and 27, attached as Exhibit A to the Declaration of Kevin Gannon in Support of

9   Hedstrom's Motion for Partial Summary Judgment on Non-Infringement ("Gannon Decl.").)[1]

10          On June 10, 2002, and before Defendants had responded to any discovery, JumpSport filed its

11  Initial Disclosure of Asserted Claims and Preliminary Infringement Contentions ("infringement

12  contentions") pursuant to Patent Local Rule 3-1, which requires the party claiming infringement to

13  identify "each accused apparatus, product, device, . . . of each opposing party. . . by name or model

14  number, if known."   JumpSport identified the infringing devices manufactured by Hedstrom as

15  "Hedstrom JumpGuard trampoline enclosures, all sizes."  (Gannon Decl., Exh. E.)  JumpSport twice

16  amended its infringement contentions, first to add photographs of the Defendants' enclosures, and

17  second to remove certain contentions about Defendant Variflex, Inc., and to clarify how two claims

18  were infringed by Hedstrom (Amatruda Decl., ¶ 3; *see* Gannon Decl., Exh. L) but, prior to trial, it did

19  not seek to amend its description of the Hedstrom enclosures at issue.

20          **B.     Hedstrom Has Two Different Sets Of Products.**

21          JumpSport was unaware at the time of the initial disclosures that Hedstrom had two separate

22  and distinct sets of enclosures -- those sold under the JumpGuard brand name and those not.

23  (Amatruda Decl., ¶ 4.)  The products are different devices.  JumpGuard units included trampolines

24  (referred to at trial as "unitized"); Hedstrom's other enclosures were stand-alone products.  The two

25

26

27  [1] To avoid duplication, relevant exhibits attached to Hedstrom's counsel's declaration will be referenced herein rather than resubmitting them with JumpSport's opposition papers.

28

1   sets of products carried different names and different product numbers, had separate manuals, and had

2   different components (i.e., the JumpGuard model included a trampoline).  (*Id.*)  The non-JumpGuard

3   enclosures made up the vast majority of Hedstrom's sales.  (*Id.* at ¶5.)

4        Hedstrom has *not* argued that the non-JumpGuard devices and the JumpGuard devices are the

5   *same devices*; indeed, it has implicitly conceded that they are not the same by failing to make this

6   contention and by consistently comparing in its moving papers the non-JumpGuard devices now being

7   sold to "**the non-JumpGuard enclosure products** that were made and sold by Hedstrom during the

8   pendency of the First Action."  (Def. Brief at 11:1-2; 13:1-2, emphasis added.)

9        **C.     Pretrial Discovery In The JumpGuard Action.**

10       Pretrial discovery in the JumpGuard action was directed to all of Hedstrom's enclosures, not

11  just the JumpGuard enclosures.  (Def. Brief at ¶ 5.)  Hedstrom produced assembly manuals for 18

12  different models of enclosures:   six unitized JumpGuard enclosure models; one non-JumpGuard

13  unitized enclosure model; and 11 enclosure-only models. (Amatruda Decl., ¶ 6.)  Hedstrom produced

14  sales numbers for all models, produced exemplars for different models, and never resisted any

15  discovery about non-JumpGuard models.   (*Id.*)   JumpSport's technical expert, Professor Steven

16  Velinsky, submitted an expert report that all of Hedstrom's trampoline enclosure products infringed

17  certain asserted claims of the JumpSport patents.  (Amatruda Decl., ¶7 and Exh. 2.)  Both JumpSport's

18  damages expert, John Hansen, and Hedstrom's damages expert, Phillip Green, prepared damages

19  analyses based on the sale of *all Hedstrom enclosures*, not just JumpGuard enclosures.  (Amatruda,

20  Decl., ¶ 8.)[2]

21       **D.     Pretrial Submissions In The JumpGuard Action.**

22       At the time the pretrial submissions were due, about 30 days before trial, Hedstrom for the first

23  time expressly informed JumpSport of its contention that JumpSport had limited its claims to the

24  JumpGuard enclosure.  (Def. Br. at ¶ 14.)  In the pretrial submissions, JumpSport asserted that its

25  _____

26  [2]  Hedstrom's technical expert, Dr. Steven McCarthy, submitted a rebuttal report that only specifically

27  addressed the JumpGuard 4-pole and 8-pole enclosures (Amatruda Decl., ¶9 and Exh. 3), but the
    report did not expressly suggest that the case was limited to JumpGuard.

28

1   infringement claims encompassed all of Hedstrom's enclosure models, not just the JumpGuard model.

2   Hedstrom disagreed, contending that the infringement contentions were limited to the JumpGuard

3   model.  (Amatruda Decl., ¶ 10.)  Neither party brought a formal pretrial motion to resolve their

4   dispute.  Both parties designated trial exhibits that included non-JumpGuard enclosures.  (*Id.* and Exh.

5   4.)

6          **E.      Hedstrom's Request To Limit The Trial To JumpGuard Enclosures.**

7          The parties notified the Court of their dispute in the Joint Comprehensive List of Allegedly

8   Infringed Claims ("Joint List"), which was filed with the Court on November 3, 2003, the first day of

9   trial.  The parties included a "Note to Court" that the scope of the infringement claims against

10  Hedstrom remained disputed, as follows:

11         Hedstrom contends that JumpSport has limited its infringement contentions to
           Hedstrom's "JumpGuard" trampoline enclosures, and reserves its right to argue this to
12         the Court and/or jury.  JumpSport contends that it has not so limited its contentions,
           and reserves its rights to argue this to the Court and/or jury.  This Note applies to all
13         claims asserted against Hedstrom's products.

14  (Gannon Decl., Exh. O.)

15         On the first day of trial, the Court stated that since it had just received the Joint List, it would

16  review and resolve the disputed issue later.  (Tr. at 3:24 - 4:9.)  Hedstrom argued that since the

17  infringement contentions listed only the JumpGuard model enclosure as the accused product, the trial

18  should proceed only as to that particular product.  (Tr. at 9:16 - 12:3.)  Hedstrom stated that "it's our

19  position that **the only accused product** from Hedstrom's standpoint are those that have been marketed

20  under the trademark JumpGuard."  (Tr. at 12:1-3, emphasis added.)  JumpSport argued that the

21  complaint, and the parties' conduct throughout the litigation, including discovery, expert analyses, and

22  designated trial exhibits, were directed to all of Hedstrom's products, including non-JumpGuard

23  enclosures and, therefore, the trial should proceed as to all infringing models of enclosures, not just

24  the JumpGuard. (Tr. at 12:6 - 13:12.)  JumpSport further requested leave to amend the disclosure to

25  list all of the Hedstrom models, asserting that there would be no prejudice to Hedstrom since all of the

26  pretrial discovery and trial submissions had included all Hedstrom enclosure models.  (Tr. at 12:25-

27  13:12.)  On November 5, 2003, the Court ruled in Hedstrom's favor, finding that "JumpSport has

28  limited its infringement contentions to Hedstrom's JumpGuard trampoline enclosures only."  (11/5/03

1    Order re Nov. 3 Filings, Gannon Decl., Exh. Q.)

2          JumpSport sought reconsideration of the Order, and the Court permitted the parties to submit

3    letter briefs.  (Tr. at 802:16 - 805:4.)  In its letter brief, JumpSport repeated its earlier arguments and

4    noted that allowing the trial to proceed against all Hedstrom models would conserve judicial and party

5    resources, because JumpSport would file a new action against Hedstrom if the order was not

6    reconsidered.  JumpSport cited *Pfaff v. Wells Elecs., Inc.*, 5 F.3d 514 (Fed. Cir. 1993) (*see* discussion

7    *infra* at 10) as authority for the principle that a second action could be brought against the excluded

8    devices.  (11/10/03 JumpSport Letter Brief, Gannon Decl., Exh. R.)  In response, Hedstrom contended

9    that under the Patent Local Rules, JumpSport should be limited to proceeding at trial against only the

10   JumpGuard model listed in the infringement contentions. (11/13/03 Hedstrom Letter Brief, Gannon

11   Decl., Exh. S.)  And although Hedstrom claimed it would be prejudiced if the Court reconsidered its

12   order, the claimed prejudice related to Hedstrom's reliance, after the trial had already started, on the

13   Court's decision to exclude the non-JumpGuard models, and not to any prejudice incurred prior to trial

14   in reliance on the infringement contentions themselves.[3]   On this prejudice issue, Hedstrom also

15   asserted that, because JumpSport intended to proceed in a second action with its infringement claims

16   against the non-JumpGuard models, JumpSport would not be *prejudiced*, and Hedstrom would not

17   receive a *windfall*, if the Court did not reconsider its Order.  Hedstrom stated:

18         **[C]ontrary to JumpSport's contention, denial of its request for reconsideration
           will not result in a windfall to Hedstrom**.  In its letter brief, JumpSport contends,
19         and cites case law supporting its contention that it will still be able to proceed against
           Hedstrom in a subsequent suit if it cannot add infringement allegations relating to
20         Hedstrom's non-JumpGuard products in this case.  [JumpSport letter brief] at pp. 4-5.
           If this is true, then a denial of JumpSport's request will neither lead to a windfall for
21         Hedstrom nor prejudice JumpSport in any significant way.  **At most, it will simply
           postpone JumpSport's recovery of any further damages that it might be entitled
22         to based upon a finding of infringement by the non-JumpGuard products.**  If
           JumpSport's patents are declared not infringed, invalid and/or unenforceable, there
23         will be no need for a second action.  If, on the other hand, JumpSport's patents are
           upheld, the major obstacle to settlement will be removed and it is likely that

24   _____

25   [3]  Thus, Hedstrom claimed that a continuance might be justified because its chief witness was injured
     just before trial, but Hedstrom would proceed to trial without seeking a continuance if the trial were
26   limited to the JumpGuard model.  Hedstrom also claimed that it had relied on the Court's decision to
     limit JumpSport's claims, which was issued a few days *after* trial began, in its trial preparation,
27   especially with respect to expert witnesses.  (*Id.*)

28

1   resolution will be reached by agreement.  **In either event, there will be no prejudice to JumpSport.**

2

3   (*Id.*, emphasis added.)  On November 14, 2003, the Court denied the motion for reconsideration.  (Tr.

4   at 1212:1 - 1214:23.)  Notwithstanding its "no prejudice" statements to this Court, five days later

5   Hedstrom filed, but did not serve, a declaratory relief action in the District Court in Massachusetts

6   alleging that the doctrine of res judicata precluded JumpSport from bringing any subsequent actions.

7   (Amatruda Decl., ¶ 11 and Exh. 5.)  (That case was transferred to this Court, and related to this case.)

8       **F.      The Trial, Verdict And Permanent Injunction In The JumpGuard Action.**

9       On December 5, 2003, the jury returned a verdict in favor of JumpSport.  Specifically, the jury

10  found that the JumpGuard enclosure infringed claims 1, 2, 7, 15 and 17 of the '845 patent and claims 9

11  and 10 of the '207 patent.  (Gannon Decl., Exh. T at 10.)[4]  The jury awarded $13,750 in royalty

12  damages from Hedstrom.  (*Id.* at 12.)   The jury further found that most of the asserted claims of the

13  JumpSport patents were valid, rejecting Defendants' invalidity defenses based on anticipation and

14  obviousness as to the those claims.  (*Id.* at 2, 3.)

15      On March 18, 2004, the Court granted JumpSport's motion for a permanent injunction barring

16  future infringement of its patents.  The Order stated:

17          Hedstrom Corporation and its officers, agents, servants, employees, and those
            persons in active concert or participation with them, during the period commencing
18          upon the date of entry of judgment, and for the remainder of the respective terms of
            each of the patents-in-suit, are hereby enjoined and restrained from making, using,
19          offering for sale, or selling in or importing into the United States the JumpGuard
            model trampoline enclosure that has been found to infringe the patents-in-suit, or
20          contributing to such infringement, or inducing others to do so.

21  (March 18, 2004 Findings of Fact and Conclusions of Law; Order on Post-Trial Motions at 14,

22  Amatruda Decl., Exh. 11.)   Furthermore, the Court held that "the injunction bars the Retailer

23  Defendants from future sales of infringing products.  Even though the jury found that the Retailer

24  _____

25  [4]  The jury found that four Retailer Defendants, Sam's Club, Wal-Mart, Alticor and Hammacher, did
     not infringe the JumpSport patents by selling JumpGuard enclosures.  (*Id.* at 11.)   Since the jury
26  found that the JumpGuard enclosure was an infringing model, the jury may have concluded that there
     was not sufficient proof of the actual number of sales by the Retailer Defendants.  In any event, this
27  finding is the subject of a pending renewed Rule 50 motion.  Moreover, these Retailer Defendants
     have been permanently enjoined from selling JumpGuard enclosures.

28

1    Defendants did not infringe the JumpSport patents in the past, they nonetheless may not infringe the

2    patents in the future through any sales of . . . the JumpGuard products." (*Id.* at 12.)

3         **G.       The Second Infringement Action.**

4         On January 14, 2004, JumpSport filed this second patent infringement action, as it informed

5    the Court and Hedstrom it would do, to recover for the infringement of its patents by Hedstrom's non-

6    JumpGuard enclosures.  The First Amended Complaint names as Defendants Hedstrom and three of

7    its retailers, Target, Toys "R" Us and Kmart.  (Gannon Decl., Exh. V.)  JumpSport alleges that

8    Hedstrom, and its retailer Defendants, infringe the JumpSport patents through the manufacture and

9    sale of non-JumpGuard trampoline enclosures.  (*Id.,* First Amended Complaint, ¶¶ 24-25, 29-30.)  The

10   complaint further alleges that all Defendants have willfully infringed the JumpSport patents, because

11   they have manufactured and/or sold infringing enclosures despite the judgment in the JumpGuard

12   action. (*Id.*, ¶26.)

13        **H.       Defendants' Continuing Infringement.**

14        Defendants have continued to sell enclosures that contain many of the same elements that were

15   found infringing in the JumpGuard enclosure.  Thus, according to its website, Hedstrom currently

16   manufactures and sells three enclosure-only models (for 8-foot trampoline (no. 11308); and for 13 and

17   14-foot trampolines (nos. 11224 and 11340)); and three unitized non-JumpGuard models (8-foot size

18   (no. 10385); 13-foot size (no. 102369); and 14-foot size (no. 102949)).  (Amatruda Decl., ¶ 12 and

19   Exh. 6.)  Of the models listed on Hedstrom's web site, only two have model numbers identical to

20   models that were produced by Hedstrom in the JumpGuard action.  Hedstrom admits that it has

21   manufactured and sold a new model since the JumpGuard trial, the "Kogee" 8-foot combination

22   model.[5]  In addition, two of the unitized models (nos. 102369 and 102949) and one of the enclosure-

23

24   _____

25   [5]  In its motion, Hedstrom represented that only one new model, the "Kogee Combo Trampoline,
     Hedstrom product number 103857" has been brought to market since the JumpGuard trial.  (Gannon
26   Decl., ¶ 35.)  This representation is not entirely consistent with Hedstrom's website,  which shows a
     unitized model no. 10385 called the "combo" model, but no "Kogee" model no. 103857.  It is unclear
27   if the "Kogee" model no. 103857 is the same as the "combo" model no. 10385, although they appear
     to be the same structure.  (Amatruda Decl., ¶ 14.)

28

1   only models (no. 11340) listed on Hedstrom's website have different model numbers from the models

2   identified in the JumpGuard action, but appear to have a similar structure.  (Amatruda Decl., ¶ 15.) [6]

3   All three retailer Defendants have also sold Hedstrom non-JumpGuard enclosure models since this

4   action was filed.  (Amatruda Decl., ¶ 13.)  Defendants do not dispute that they have sold, and continue

5   to sell, non-JumpGuard enclosures, including both models that were sold prior to the judgment and at

6   least one new model.

7   **III.   ARGUMENT**

8        Hedstrom cannot succeed on its motion because under both Federal Circuit and Ninth Circuit

9   law, claim preclusion only applies to cases involving the same cause of action.  Since cases

10  proceeding against different devices ***do not*** involve the same cause of action and JumpSport's claims

11  in the two actions involve different Hedstrom devices, claim preclusion cannot apply.  Claim

12  preclusion also cannot apply because the Court was not asked to, and did not involuntarily dismiss

13  with prejudice any of JumpSport's unadjudicated claims in the JumpGuard action.  It would be

14  fundamentally unfair and provide Hedstrom an improper windfall to apply the doctrine in this case;

15  there is not the requisite privity between Hedstrom and the Retailer Defendants; and, at a minimum,

16  Defendants are liable for their post-judgment infringement because that infringement creates a new

17  cause of action.

18       **A.    Under Federal Circuit Law, Claim Preclusion Does Not Apply To Bar
              JumpSport's Claims Because The Two Actions Involve Different Devices.**
19

20            **1.    Legal Standard.**

21       To make a case for claim preclusion, Hedstrom has the burden of establishing that the

22  JumpGuard action "(1) involved the same 'claim' or cause of action as the later suit, (2) reached a final

23  _____

24  [6]  The models identified by Hedstrom in discovery in the JumpGuard action were: enclosure-only
        models: for 8-foot trampoline (no. 11308); for 13-foot trampoline (no. 11313); for 14-foot trampoline
25      (no. 11314); and for 13 and 14-foot trampolines (nos. 11202; 112206; 112206U; 11224; 11320;
        11350; 113292);  JumpGuard unitized models: 8-foot size (nos. 10850; 10850Z); and 14-foot size
26      (nos. 10450; 10450Z, 1040ZA; 9819); unitized non-JumpGuard models:  14-foot size (no. 10450ZB).
        (Amatruda Decl., ¶ 6 .)

27

28

1    judgment on the merits, and (3) involved identical parties or privies." *Sidhu v. The Flecto Co.,* 279

2    F.2d 896, 900 (9th Cir. 2002).  *See also Zip Dee, Inc. v. Dometic Corp.,* 886 F. Supp. 1427 (N.D. Ill.

3    1995) (defendant bears burden of establishing defense).   The Supreme Court has cautioned that

4    because of its draconian results the defense of claim preclusion should not be applied to bar a cause of

5    action without careful scrutiny:

> Because res judicata may govern grounds and defenses not previously litigated,
> however, it blockades unexplored paths that may lead to truth.  For the sake of repose,
> res judicata shields the fraud and the cheat as well as the honest person. It therefore is to
> be invoked only after careful inquiry.

9    *Brown v. Felsen,* 442 U.S. 127, 132 (1979).

10        Hedstrom wrongly suggests that Ninth Circuit law controls the critical issue of what is a claim.

11   In fact, Federal Circuit law governs cases arising under the patent laws, *Foster v. Hallco Mfg. Co.,* 947

12   F.2d 469 (Fed. Cir. 1991), and applies to the issue of what constitutes the relevant cause of action in a

13   patent infringement case. *SciMed Life Sys. v. Advanced Cardiovascular Sys., Inc.,* 1999 U.S. Dist.

14   LEXIS 21494, 51 U.S.P.Q.2d 1221 (N.D. Cal. 1999); *see Pfaff v. Wells Elecs.,* 5 F.3d 514, 517-18

15   (Fed. Cir. 1993).  Regional circuit law only governs more general claim preclusion issues that do not

16   implicate patent law, such as the preclusive effect of a consent judgment.  *Foster* at 477, n.7.  The

17   Court in *SciMed* distinguished the case relied on by Defendants, *Mars v. Nippon Conlux Kabushiki-*

18   *Kaisha,* 58 F.3d 616 (Fed. Cir. 1995) as only involving a general privity issue that did not implicate

19   patent law, whereas the issue of what constitutes a patent infringement cause of action for claim

20   preclusion purposes directly implicated patent law, and therefore should be decided under Federal

21   Circuit precedent.  Since the same question is at issue here, the Court should apply Federal Circuit law

22   to determine whether the same patent infringement cause of action is involved in both actions.

23        The cases applying Federal Circuit law narrowly construe the claim or cause of action

24   requirement in claim preclusion cases.  Thus, under the law of that circuit, that a patent owner can

25   bring separate lawsuits based on i) the same patents but different devices (*Pfaff v. Wells Electronics*, 5

26   F.3d 514 (Fed. Cir. 1993)); ii) the same devices, but different patents (*Kearns v. GMC*, 94 F.3d 1553

27   (Fed. Cir. 1993)); and iii) the same patents and the same devices but different defendants (*American*

28   *Chem. Paint Co. v. Thompson Chem. Corp.*, 244 F.2d 64 (9th Cir. 1957)).  The courts have recognized

Pl's Memo. of Pts. & Auth. In Oppos. to Defs'
60272910    Mot. for Partial Summary Judgment          9          *JumpSport, Inc. v. Hedstrom Corp., et al.*
Case No. C 04-0199 PJH

1    that the underlying principles of res judicata and fundamental fairness override the judicial economies

2    that would result from forcing claimants not to split such actions.

3        Most pertinent here, the Federal Circuit has consistently held that claim preclusion does not

4    bar a plaintiff from bringing a second patent infringement suit involving different models or devices

5    than the models or devices that were the subject of the first action.  In *Pfaff v. Wells Electronic, Inc.,* 5

6    F.3d 514 (Fed. Cir. 1993), the Federal Circuit held:

7            We have said previously that "judicial statements regarding the scope of
         patent claims are hypothetical insofar as they purport to resolve the question  of
8        whether prior art or products not before the court would, respectively,  anticipate or
         infringe the patent claims." *A.B. Dick Co. v. Burroughs Corp.,*  713 F.2d 700, 704,
9        218 USPQ 965, 968 (Fed. Cir. 1983). **"A device not previously before the court,
         and shown to differ from those structures previously litigated, requires**
10       **determination on  its own facts."**  *Del Mar Avionics, Inc. v. Quinton Instrument Co.,*
         836 F.2d 1320, 1324, 5 USPQ2d 1255, 1258 (Fed. Cir. 1987).  *Young Engineers, Inc.*
11       *v. United States Int'l Trade Comm'n* , 721 F.2d 1305, 1316, 219 USPQ 1142, 1152
         (Fed. Cir. 1983) ("**With respect to patent litigation, we are unpersuaded that an**
12       **'infringement claim,' for purposes of claim preclusion,  embraces more than the
         specific devices before the court in the first suit.**").

13

14   *Id.* at 517-518 (emphasis added).

15       Under *Pfaff* and the Federal Circuit cases it cited, a different cause of action is stated if the

16   model or product is not identical, even if it has a similar structure to the device accused in the first

17   action.  Thus, in *Del Mar Avionics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320 (Fed. Cir. 1987),

18   which involved several actions involving three similar models of infringing devices, the Federal

19   Circuit held that the district court properly declined to apply claim preclusion to the determination of

20   whether a third model infringed, based on prior judgments involving two related models.  Claim

21   preclusion did not apply because the device "was not *identical*" to the previously litigated devices:  "A

22   device not previously before the court, and shown to differ from those structures previously litigated,

23   requires determination on its own facts." *Id.* at 1324.  In *Unique Coupons, Inc. v. Northfield Corp.,*

24   2000 U.S. Dist. LEXIS 5859 (N.D. Ill. Mar. 30, 2000) the court followed *Del Mar* and rejected the

25   argument that claim preclusion applied to a model that was substantially similar to the prior model.

26   The court held that claim preclusion did not apply where the models were not identical, *even if the*

27   *differences were not material to the infringement analysis*.  Claim preclusion requires "strict identity

28   of claims" which means identical devices.  *Id.*

The Federal Circuit reached the same result in *Young Engineers, Inc. v. U.S.I.T.C.,* 721 F.2d 1305 (Fed. Cir. 1983), in which an International Trade Commission proceeding was brought to stop the importation of infringing products.  Defendant there argued that a prior patent infringement suit that was dismissed with prejudice barred plaintiff from bringing a claim for infringement of the same patent.  The court held that defendants had not shown that the same product was involved, and that the claim preclusion effect of the prior action was limited to the specific devices that had been before that court.  Thus, plaintiff could still assert the same patent against different infringing models; defendant did not become, in effect, "an unfettered licensee" of the patent.  *Id.* at 1316.  *See also Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 479-80 (Fed. Cir. 1991) (a patent infringement claim addresses only the device that is before the court); *Weatherchem Corp. v. J.L. Clark, Inc.,* 163 F.3d 1326, 1335 (Fed. Cir. 1998) ("a determination of infringement applies only to a specific accused product.").

### 2. The JumpGuard Action And This Action Involve Different Devices.

Hedstrom does <u>not</u> argue that the non-JumpGuard enclosures are identical to or substantially similar to the JumpGuard enclosures.  Indeed, Hedstrom consistently avoids making this argument, no doubt (vainly) seeking to avoid the collateral estoppel effect of the infringement verdict against the JumpGuard model.  Moreover, Hedstrom would be estopped from making that argument since its position in the JumpGuard action was that the JumpGuard enclosure was different.  The primary difference between the JumpGuard enclosure and the non-JumpGuard enclosures is substantial -- that the JumpGuard enclosure is unitized, i.e., packaged with a trampoline.  This structural distinction led Defendants in the JumpGuard action to argue that unlike the JumpGuard, non-unitized enclosures could not *directly infringe* the JumpSport patents because they did not include a trampoline, which is an element of several patent claims.  (*See*, *e.g.*, Tr. at 2180:7-21.)  Under *Pfaff*, *Del Mar*, and the other Federal Circuit authority cited above, since the devices in the two actions here are different, claim preclusion cannot apply.

### 3. JumpSport's Attempt To Include The Non-JumpGuard Enclosure In The First Action Does Not Alter The Claim Preclusion Analysis.

Since it cannot argue that the JumpGuard and non-JumpGuard enclosures are identical, Hedstrom argues that most of the enclosures accused in this action are identical to, or essentially the

1   same as, the *non-JumpGuard enclosures* that the Court held were *not* the subject of the JumpGuard

2   action.[7]  This comparison is completely irrelevant since the JumpGuard action was limited, as a matter

3   of law and on Hedstrom's insistence, to the JumpGuard enclosures.  As Hedstrom stated at trial:  "the

4   only accused product from Hedstrom's standpoint are those that have been marketed under the

5   trademark JumpGuard." (Tr. at 12:1-3.)  Having advocated the position (and having it accepted by the

6   Court), that the JumpGuard was the only model enclosure before the Court in the JumpGuard action,

7   Hedstrom cannot now argue that the other Hedstrom enclosure models were before the Court in that

8   action in order to meet the same cause of action requirement of the claim preclusion cases.  Indeed, the

9   Court held that under the Patent Local Rules an infringement action in the Northern District of

10  California can adjudicate only the accused models listed in the infringement contentions, regardless of

11  the allegations of the complaint or the scope of discovery.    Hedstrom's argument that the non-

12  JumpGuard enclosures were before the Court in the JumpGuard action simply because JumpSport

13  tried unsuccessfully to include them is unavailing, and is contrary to its position in the JumpGuard

14  action.  *See New Hampshire v. Maine*, 532 U.S. 742 (2001) (judicial estoppel prevents a party from

15  taking an inconsistent position after court acted on prior position).

16       The Northern District has strictly interpreted the Patent Local Rules to limit a patent

17  infringement cause of action to the devices accused in the infringement contentions, and to restrict

18  amendment of those contentions to add new devices.  The purpose of these rules is to require the

19  parties to crystallize and adhere to their theories early, "to prevent the 'shifting sands' approach to

20  claim construction." *Atmel Corp. v. Information Storage Devices, Inc.*, 1998 U.S. Dist. LEXIS 17564

21  (N.D. Cal. Nov. 4, 1998). *See Integrated Circuit Systems, Inc. v. Realtek Semiconductor Co.*, 308 F.

---

[7]  Defendants claim that: "with the exception of the Kogee enclosure recently offered for sale by Hedstrom, the products at issue in this action are identical to, or essentially the same as, *i.e.,* immaterially different from, the non-JumpGuard enclosure products that were made and sold by Hedstrom during the pendency of the First Action and that were, at least initially by JumpSport's own admission, part of the First Action." (Def. Br. at 13.)  As admitted by Hedstrom, after the trial it manufactured and sold a new model of unitized enclosure.  Hedstrom does not contend that infringement claims directed to this model are barred under any theory, and does not seek summary judgment on this model, which appears to infringe at least one valid claim of the JumpSport patents. (Amatruda Decl., ¶ 15.)

Pl's Memo. of Pts. & Auth. In Oppos. to Defs'
Mot. for Partial Summary Judgment            12

*JumpSport, Inc. v. Hedstrom Corp., et al.*
Case No. C 04-0199 PJH

60272910

1   Supp. 2d 1106, 1107 (N.D. Cal. 2004) ("Once the initial disclosures are made, the lawsuit proceeds as

2   to the products accused in those disclosures.").  *See also LG Electronics Inc. v. Q-Lity Computer, Inc.*,

3   211 F.R.D. 360 (N.D. Cal. 2002). These strict requirements are in stark contrast to the more liberal

4   amendment policy of Rule 15, Fed. R. Civ. P. under which courts often allow amendments up to and

5   through the trial.  *See, e.g., Galindo v. Stoody Co.*, 793 F.2d 1502, 1512-13 (9th Cir. 1986).  Nothing

6   in the Patent Local Rules, however, supports the interpretation urged by Defendants; i.e., that by

7   defining the patent infringement cause of action as limited to the devices listed in the infringement

8   contentions, the rules operate to forever bar a plaintiff from recovering against other devices it had not

9   disclosed.

10      In fact, the limitations inherent in the Patent Local Rules are a further reason not to apply claim

11  preclusion.   The Restatement (Second) of Judgment recognizes that it is unfair to apply claim

12  preclusion where such a barrier exists:

13      The general rule of §24 [claim preclusion] is largely predicated on the assumption that
        the jurisdiction in which the first judgment was rendered was one which put no formal
14      barriers in the way of a litigant's presenting to a court in one action the entire claim
        including any theories of recovery or demands for relief that might have been available
15      to him under applicable law.  **When such formal barriers in fact existed and were
        operative against a plaintiff in the first action, it is unfair to preclude him from a
16      second action in which he can present those phases of the claim which he was
        disabled from presenting in the first.**

17

18  RESTATEMENT (SECOND) OF JUDGMENTS, § 26, cmt. (c) at 1151 (emphasis added).[8]   The barrier

19  referred to in section 26 may be the result of a case-specific ruling that prevents a plaintiff from

20  presenting its full claim:

21      Limitations on the theories that can be pursued in a first action may arise not from
        general rules of jurisdiction or procedure but from specific rulings made in the course
22      of an action.   A second action may be permitted, rejecting claim preclusion, if the
        plaintiff specifically attempted to advance all theories in the first action but was
23      rebuffed as to the matter advanced in the second action.

24  _____

25  [8]   RESTATEMENT (SECOND) OF JUDGMENTS, § 26, cmt. (c) recognizes other exceptions to the
        application of claim preclusion, including where the defendant has acquiesced to a plaintiff's splitting
26      of a cause of action, or when the court has expressly reserved the plaintiff's right to maintain the
        second action.   Here, the record in the JumpGuard action shows at a minimum that Hedstrom
27      acquiesced to JumpSport's filing of a second action against the non-JumpGuard models.

28

1   18 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 4412 at 308 (citing *Delew v.*
2   *Wagner*, 143 F.3d 1219 (9th Cir. 1998)).

3       Here, the Court held that JumpSport's claim was defined by the infringement contentions, and
4   that JumpSport's unsuccessful attempt to include other devices did not redefine the scope of its claim.
5   As a result, this case is no different from ones like *Pfaff* and the others cited above recognizing that a
6   patent owner can maintain different lawsuits based on different devices.

### 4.   Hedstrom's Authorities Do Not Support The Application Of Claim Preclusion Here.

9       The Federal Circuit and other cases Hedstrom cites in discussing the Ninth Circuit standard do
10  not support its argument that the cause of action in the JumpGuard action necessarily included the
11  non-JumpGuard enclosures.  (*See* Def. Br. at 12-14.)  Thus, Defendants misread *Kearns v. General*
12  *Motors Corp.*, 94 F.3d 1553 (Fed. Cir. 1996), when they argue that the Federal Circuit held that a
13  plaintiff was barred from asserting patents that "could have been asserted in the prior action."  (Def.
14  Brief at 13.)  Rather, the court held that although plaintiff was barred from alleging infringement of
15  five patents because a prior suit on those specific patents had been dismissed with prejudice, plaintiff
16  *could* proceed in a second action asserting different patents *against the same products*.  The Court
17  held the fact that the infringement claims arising from the different patents *could have been brought* in
18  the first action did not preclude the later suit because each patent raised a separate cause of action:

19          When applying res judicata to bar causes of action that were not before the court in the
            prior action, due process of law and the interest of justice require cautious restraint.
20          Restraint is particularly warranted when the prior action was dismissed on procedural
            grounds.

21  *Id.* at 1556.  Hedstrom's reliance on another Federal Circuit case, *Mars, Inc. v. Nippon Conlux*, 58
22  F.3d 616 (Fed. Cir. 1995), is also inappropriate.  That case focused on privity issues, not the definition
23  of what is the same cause of action.

24      Nor do Defendants' cases from other jurisdictions support the argument that JumpSport cannot
25  proceed in this case against the different models.  In *Panoualias v. National Equipment Co.*, 269 F.
26  630 (2d Cir. 1920) the issue was simply that having obtained an injunction against a particular device,
27  plaintiff could not recover damages in a second action for the sales of the same infringing device prior

60272910   Pl's Memo. of Pts. & Auth. In Oppos. to Defs'
Mot. for Partial Summary Judgment          14          *JumpSport, Inc. v. Hedstrom Corp., et al.*
Case No. C 04-0199 PJH

1    to the injunction.   Here, JumpSport is not seeking a different remedy against the JumpGuard

2    enclosures in a second suit; instead, JumpSport is pursuing its claims against different devices.   In

3    *Rocket Jewelry Box., Inc. v. Noble Gift Packaging, Inc.,* 2001 WL 38285 (S.D.N.Y. 2001), plaintiff

4    had dismissed its infringement claims with prejudice against a specific product, and therefore could

5    not file a subsequent infringement suit against that product. Here, there was no dismissal with

6    prejudice of JumpSport's claims against any product.   Finally, in *General R. Signal Co. v. Union

7    Simplex Train Control Co.,* 23 F. Supp. 667 (D. Del. 1938) a district court case that was decided

8    before the Federal Circuit precedent cited above, the Delaware court held that a plaintiff could not

9    separately assert individual patent claims in a second action, when the same patent was the subject of

10   an earlier action.   None of these cases, or any authority Hedstrom cites, hold that a second action

11   cannot be brought against a different device than the device in the first action.

12   **B.      Under The Factors Applied In The Ninth Circuit This Action States A Different
             Cause Of Action.**

13

14   Even under the Ninth Circuit's four-factor standard for claim preclusion, which Hedstrom

15   erroneously concludes should be followed here, this action states a different cause of action.

16   **1.      The Rights And Interests Established In The Prior Action Will Not Be
             Impaired Or Destroyed By The Second Action.**

17

18   This factor weighs heavily in favor of JumpSport.   The rights and interests established in the

19   prior judgment will not be destroyed or impaired by prosecution of the second action; instead, the

20   second action is necessary to preserve those rights and interests.   The first action established that the

21   majority of JumpSport's patent claims were valid, and that Hedstrom's JumpGuard enclosures

22   infringed those claims.   If the second action cannot proceed, Defendants will continue to infringe

23   JumpSport's valid patents and JumpSport will have no recourse.   This result would destroy the rights

24   established in the first action, and would undermine the strong public policy in favor of upholding

25   patent rights.

26   Hedstrom does not identify the "rights and interests" that the trial established in its favor, other

27   than claiming that because JumpSport did not prosecute its non-JumpGuard claims in that action,

28   Hedstrom should not be liable for infringement by those models.   This windfall is not the type of right

60272910    Pl's Memo. of Pts. & Auth. In Oppos. to Defs'
             Mot. for Partial Summary Judgment        15        *JumpSport, Inc. v. Hedstrom Corp., et al.*
                                                                Case No. C 04-0199 PJH

1    and interest protected by the prior judgment.  Nor does JumpSport receive an impermissible "second

2    bite at the apple" by proceeding against Hedstrom's other infringing enclosures, because JumpSport

3    won the first infringement action, and JumpSport is permitted to state new causes of action against

4    different devices and for post-trial damages.  Having made the election to force JumpSport to proceed

5    in a second action, and having argued to the Court that the inevitable second action meant JumpSport

6    would not be prejudiced and Hedstrom would not receive a windfall, Hedstrom had no rights and

7    interests to be impaired.

8                    **2.      Substantially The Same Evidence Will Not Be Presented In The Two
                           Actions.**

9

10         The second factor also supports the denial of Hedstrom's motion, because the evidence in the

11   two actions would differ in certain meaningful ways.  First, Hedstrom admits, as it must, that the

12   evidence in the two actions is not substantially the same, because relevant evidence regarding

13   infringement and damages caused by the non-JumpGuard enclosures was excluded from the first trial

14   on Hedstrom's motion.  Thus, Hedstrom acknowledges that evidence that will be presented in this

15   action is evidence that JumpSport "*would have submitted* at trial in the First Action,"  but of course

16   did not submit. (Def. Br. at 11, emphasis added.)  Because the trial will involve different devices, and

17   because Defendants argued the structural differences in the devices affected liability for direct as

18   opposed to indirect infringement, Defendants cannot now claim that the infringement evidence will be

19   the same.  In addition, no evidence was presented at the first trial about the sales of infringing

20   enclosures by Target, Toys "R" Us, or Kmart, so that evidence will be new.  Finally, this action

21   includes a claim for willful infringement against all Defendants based on their conduct *after* the

22   infringement verdict and permanent injunction were entered, evidence of which was not presented

23   previously.

24                    **3.      The Two Actions Only Partially Involve Infringement Of The Same Right.**

25         The third factor is whether the two actions involve infringement of the same right.  Both

26   actions allege infringement of claims of JumpSport's patents by Hedstrom enclosures. Some of the

27   non-JumpGuard enclosures have features that infringe specific claims of the JumpSport patents that

28   were not asserted in the prior action, and therefore those patent rights have not been asserted

1    previously against Hedstrom.    (Amatruda Decl., ¶ 17.)    This action includes a contributory

2    infringement claim that was not stated in the prior action.    In addition, by naming new retailer

3    Defendants, this action involves the infringement of JumpSport's separate right to prevent the retailer

4    Defendants from the unauthorized sale of infringing enclosures, which right was not asserted against

5    those parties in the prior action.  *See* 8 CHISUM ON PATENTS at ¶21.03[3][e] ("A patent owner has

6    separate exclusive rights as to the unauthorized manufacture, sale and use of the claimed invention.

7    Thus an owner may sue a manufacturer, a dealer/reseller and a user.").

8               **4.     This Action Does Not Arise From The Same Transactional Nucleus Of
                         Facts As The JumpGuard Action.**

9

10          Although there is some overlap in the actions because both actions arise out of Defendants'

11   infringement of JumpSport's patents, that overlap is not sufficient to meet this factor under applicable

12   law for several distinct reasons, outlined in detail in other sections of this brief.    Thus, infringement

13   claims against different devices involve different "transactional facts" under Federal Circuit law.  (*See*

14   *supra* at 9-11.)  By the same reasoning, infringement claims for Defendants' post-judgment conduct

15   also involve different "transaction facts;" as do infringement claims against different parties.  (*Infra* at

16   22-25.)

17          The cases relied upon by Defendants do not compel a different conclusion and they are

18   distinguishable for the reasons stated in section A-4, above.    In fact, Defendants cite to some Federal

19   Circuit authority for what constitutes a patent infringement cause of action, and Federal Circuit

20   authority, including *Pfaff*, *Del Mar* and *Kearns*, holds that a claim involving a different device or

21   different patents is a different claim, even if that claim could have been brought in the prior claim.

22   The remaining Ninth Circuit cases cited by Defendants do not support the argument that this action is

23   barred by claim preclusion.  Thus, in *McClain v. Apodaca*, 793 F.2d 1031, 1034 (9th Cir. 1986), claim

24   preclusion applied because the second suit simply sought a different remedy for the same breach of

25   contract claimed in the first suit.  And *C.D. Anderson & Co. v. Lemos*, 832 F.2d 1097, 1100 (9th Cir.

26   1987) and *Western Sys. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992) are cited only for general claim

27   preclusion guidelines, and do not address what constitutes a cause of action (or the same transactional

28   nucleus of facts) in a patent infringement case.

1

**C.     The Final Judgment In The JumpGuard Action Was Not An Involuntary
       Dismissal With Prejudice.**

2

3    The March 23, 2004 judgment is a final judgment for claim preclusion and collateral estoppel

4    purposes, even though post-trial motions remain under submission, and an appeal is likely.  *See*

5    *Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.,* 170 F.3d 1373 (Fed. Cir. 1999).

6    The judgment states:

7          On December 5, 2003, the jury found in favor of plaintiff.  On March 18, 2004, the
          court awarded further equitable relief to plaintiff [the permanent injunction against
8          Hedstrom and its retailers] . . .  Consequently, it is Ordered, Adjudged and Decreed
          that judgment be entered in favor of plaintiff in the amount of   . . . $13,750 against
9          defendant Hedstrom, and equitable relief as outlined in the court's order of March 18,
          2004.

10

11    (March 23, 2004 Judgment, Gannon Decl., Exh. W.)   Therefore, the final judgment shows that

12    JumpSport prevailed at trial on the infringement claims against the JumpGuard enclosure as well as on

13    Defendants' invalidity defenses.  Nothing in the judgment addressed the merits or disposition of any

14    infringement claims against the non-JumpGuard models, since they were not the subject of the trial or

15    judgment.

16    That the judgment is final is uncontroverted.  Hedstrom, however, argues that the scope of the

17    final judgment is far broader than the judgment that was entered, claiming that because the Court

18    limited the trial to the JumpGuard model, the final judgment in JumpSport's favor should be construed

19    as an involuntary dismissal with prejudice of JumpSport's unadjudicated patent infringement claims

20    pursuant to Rule 41(b), Fed. R. Civ. P.  (Def. Br. at 15-16.)  In effect, Hedstrom's argument is that

21    even if JumpSport is entitled to state separate causes of action for JumpGuard and non-JumpGuard

22    enclosures, because JumpSport tried unsuccessfully to include the non-JumpGuard enclosures in the

23    same cause of action, its failure to do so dismissed those claims with prejudice.  Hedstrom's argument

24    is not supported by the relevant facts or authorities.

25    The Court's ruling on the JumpGuard issue was not a dismissal, let alone an involuntary

26    dismissal, with prejudice under Rule 41.  The Court held that the non-JumpGuard devices that were

27    not specifically identified in infringement contentions were not included in that infringement claim.

28    The Court did not hold that JumpSport was precluded from pursuing those devices in another action,

1   as JumpSport was expressly allowed to do so under Federal Circuit law and the Patent Local Rules.

2         Moreover, none of the requirements for an involuntary dismissal with prejudice under Rule

3   41(b) are met here.  First, there was no 'failure' by JumpSport to prosecute the action or to comply

4   with any rule or Court order.  Second, there was no dismissal motion filed by Hedstrom.  Third, there

5   was no order of dismissal, let alone a dismissal with prejudice.  In fact, there was no legal basis upon

6   which an involuntary dismissal motion could have been granted, because JumpSport's infringement

7   contentions complied with the Local Rules.  *See Network Caching Tech., LLC v. Novell, Inc.*, 2003

8   U.S. Dist. LEXIS 9881 (N.D. Cal. 2003) (involuntary dismissal unwarranted where infringement

9   contentions comply with Patent Local Rules); *Zaroff v. Holmes*, 127 U.S. App. D.C. 1 (D.C. Cir.

10  1967) (dismissal with prejudice not appropriate where local rule did not so specify).

11        Involuntary dismissal is a sanction of last resort that is only imposed in extreme circumstances,

12  and the court is required to consider several factors, including the policy favoring disposition of cases

13  on their merits, none of which were considered here.  *Network Caching*; *see also Yourish v. California*

14  *Amplifier,* 191 F.3d 983, 990 (9th Cir. 1999).  Moreover, at the time the Court was considering

15  whether to limit JumpSport to the model disclosed in the infringement contentions, JumpSport stated

16  that it would pursue a second action under relevant Federal Circuit authority.  Hedstrom never made a

17  motion asking that the Court enter a dismissal of JumpSport's claims with prejudice.  Instead,

18  Hedstrom informed the Court that if it limited the action to the JumpGuard model, "there would be no

19  prejudice to JumpSport" because JumpSport intended to file a second infringement action.  (Gannon

20  Decl., Exh. S.)  Having made that representation, Hedstrom should be estopped from seeking a

21  different result.  (See discussion, *infra* at 21-22.)

22       **D.**    **Essential Fairness, Important Policy Considerations, And Judicial Estoppel**

23               **Support JumpSport To Proceed With Its Patent Infringement Claims.**

24        Fundamental fairness and important policy reasons also support denial of Hedstrom's motion.

25  The final judgment in the JumpGuard action established that JumpSport's patents were valid, and that

26  Hedstrom's JumpGuard enclosure infringed those patents.  By filing this action, JumpSport is seeking

27  to prevent Hedstrom from trying to turn that judgment into a virtual nullity.  If Hedstrom were to

28  prevail in its argument, it would no doubt take the position that it would be free to manufacture

enclosures that infringe JumpSport's valid patents without any liability, a result that is directly contrary to the strong public policy favoring the protection of patent rights.  As the Supreme Court has held, applying claim preclusion so as to give a defendant "a partial immunity from civil liability for future violations" is not consistent with the doctrine of claim preclusion, and is a result that should be particularly rejected where, as here, there is a strong public interest in the vigilant enforcement of the rights protected by the underlying claim.  *Lawlor v. National Screen Service Corp.,* 349 U.S. 322 (1955).

The prejudice claimed by Hedstrom consists of the past expense and disruption of defending against the JumpGuard action in California, and the uncertainty of whether Hedstrom and its retailers can continue to sell non-JumpGuard enclosures.  Given that Hedstrom was found liable for patent infringement in the JumpGuard action, its claim of inconvenience is not compelling.  Moreover, Hedstrom successfully forced JumpSport to accuse Hedstrom's infringement products in two separate actions, when the claims could have been resolved in the first action, promptly ending any uncertainty. Moreover, any inconvenience or delay to Hedstrom because this litigation must go forward pales in comparison to the prejudice JumpSport would suffer if it is barred from asserting its valid patents against Hedstrom.

Nor can Hedstrom argue persuasively that the policy of judicial efficiency outweighs other considerations at issue here, because the courts expressly allow patent owners to bring separate, but similar actions in various circumstances.  JumpSport is no different than all of the plaintiffs in the situations noted above (*see supra*, section A) who *could have* litigated their claims in one lawsuit but did not.  Indeed, this case simply is not distinguishable from the cases that hold that patent owners can bring separate lawsuits against the same party under the same patents but based on different devices. Moreover, the result Hedstrom seeks would misapply the Patent Local Rules, which are clearly not intended to be an adjunct to claim preclusion principles; rather they are intended to force the plaintiff to identify the devices at issue and define the scope of its lawsuit early to streamline the claim construction process. Whatever JumpSport's intent or understanding may have been, the Court's ruling was that by virtue of its infringement contentions JumpSport's lawsuit was limited to the JumpGuard enclosures.  If a plaintiff can bring separate actions against separate devices, there is no reason why a

Pl's Memo. of Pts. & Auth. In Oppos. to Defs'
Mot. for Partial Summary Judgment

60272910

20

*JumpSport, Inc. v. Hedstrom Corp., et al.*
Case No. C 04-0199 PJH

1    plaintiff should not be able to preserve that right by limiting its product disclosure pursuant to the

2    Local Rules to a specific device.  A different result would turn the Patent Local Rules into a claims

3    preclusion barrier.

4            Furthermore, because Hedstrom took the position in the JumpGuard action that its motion

5    should be granted because JumpSport could proceed in a second suit, and thus would not be

6    prejudiced by an order limiting its claims in the JumpGuard action (Gannon Decl., Exh. S), and the

7    Court granted Hedstrom's motion, Hedstrom should be judicially estopped from claiming in this case

8    that JumpSport's claims are barred by claim preclusion.  Judicial estoppel "is an equitable doctrine that

9    precludes a party from gaining an advantage by asserting one position, and then later seeking an

10   advantage by taking a clearly inconsistent position."  *Hamilton v. State Farm Fire & Cas. Co.*, 270

11   F.3d 778 (9th Cir. 2001).  It depends on three factors:  i) "a party's later position must be 'clearly

12   inconsistent' with its earlier position"; ii) "whether the party has succeeded in persuading a court to

13   accept the party's earlier position, so that judicial acceptance of an inconsistent position in a later

14   proceeding would create 'the perception that either the first or the second court was misled'"; and iii)

15   "whether the party seeking to assert an inconsistent position would derive an unfair advantage or

16   impose an unfair detriment on the opposing party if estopped."  *New Hampshire v. Maine*, 532 U.S.

17   742 (2001) (citations omitted).

18           All three factors weigh heavily in favor of applying judicial estoppel to prevent Hedstrom from

19   asserting that JumpSport is barred from proceeding in this action.  As for the first factor, Hedstrom's

20   'no prejudice' argument to the Court is diametrically opposed to its position in this case.  Hedstrom's

21   conduct also meets the second factor.  The Court in the JumpGuard action accepted Hedstrom's

22   arguments that JumpSport would not be prejudiced and limited that action to the JumpGuard

23   enclosure.  If this Court now holds that JumpSport is precluded from bringing a second infringement

24   action, it would be accepting an inconsistent position.[9]  As to the third factor, it is beyond dispute that

25   

26   [9]  Supporting the application of an estoppel is the inference arising from the fact that only five days
27   elapsed between the filing of Hedstrom's declaratory relief action in Boston and its "no prejudice"
     filing in this Court.

28

1    if Hedstrom is successful in asserting its inconsistent position in this action, Hedstrom will derive an

2    unfair advantage and impose an unfair detriment.   If JumpSport cannot sue Hedstrom for the

3    infringement by the non-JumpGuard enclosures, JumpSport will suffer not only the loss of more than

4    $1 million in damages already accrued, but also, potentially, the loss of one of its core rights as a

5    patent owner, to prevent others from using its invention unlawfully, and Hedstrom will acquire

6    immunity for its infringement.   For these reasons, the Court should hold that judicial estoppel applies

7    in this case to bar Hedstrom from asserting that JumpSport's claims are barred.

8    **E.    Defendants Target, Toys "R" Us And Kmart Were Not Parties Or In Privity With**
     **Hedstrom.**

9

10   JumpSport has a separate claim against the four retailer Defendants for their infringing sales of

11   Hedstrom's enclosures.   *See* 8 CHISUM ON PATENTS § 21.03[3].   Nevertheless, Hedstrom seeks to

12   invoke claim preclusion on behalf of the retailer Defendants, even though none of them were parties to

13   the prior judgment.   To invoke claim preclusion, a party must have been a party to the first action, or

14   be in privity with a party to that action   Defendants Target and Toys "R" Us were never named as

15   defendants in the JumpGuard action.   And although Defendant Kmart was initially named as a

16   defendant in the JumpGuard action, Kmart filed a bankruptcy petition and served a notice of automatic

17   stay pursuant to which JumpSport's claims against Kmart were not tried, and no final judgment was

18   entered as to Kmart.   11 U.S.C. § 362.   (Amatruda Decl., ¶ 21 and Exh. 12.)   Therefore, none of the

19   retailer Defendants were parties to the JumpGuard action for purposes of applying claim preclusion.

20   Hedstrom claims that even if they were not parties, the relationship between Hedstrom and

21   each of the three Retailer Defendants is legally sufficient to create privity, and therefore the Court

22   should hold that claim preclusion bars JumpSport from pursuing its infringement claims against these

23   Retailer Defendants.   (Def. Brief at 17-18.)   But Hedstrom's arguments are without merit.   Its

24   argument that JumpSport is not entitled to recover double damages is an incomplete statement of the

25   law, and is not a basis for finding privity.   A patent owner "may sue a manufacturer, a dealer/reseller,

26   and a user. . . . [B]ecause such infringers are by long tradition severally as well as jointly liable, they

27   may be sued separately."   8 CHISUM ON PATENTS § 21.03[3][e] .   *See also American Chem. Paint Co.*

28   *v. Thompson Chem. Corp.*, 244 F.2d 64, 67 (9th Cir. 1957).   Moreover, a patent owner may recover

60272910    Pl's Memo. of Pts. & Auth. In Oppos. to Defs'
Mot. for Partial Summary Judgment                22                *JumpSport, Inc. v. Hedstrom Corp., et al.*
                                                                   Case No. C 04-0199 PJH

separate judgments for damages and injunctive relief against retailers and manufacturers, and entry of judgment against one infringer does not relieve other infringers of liability.  8 CHISUM ON PATENTS at §20.03[7][b].  Hedstrom cannot cite any authority for its argument that a general rule regarding collection of double damages creates privity between infringers who are jointly and severally liable.

Nor does Hedstrom cite any cases in which privity was found to exist based solely on a manufacturer-retailer relationship where there are certain indemnity obligations.  *Cf. Herbert Rosenthal Jewelry Corp. v. Zale Corp.*, 323 F. Supp. 1234 (S.D.N.Y. 1971) (retailer defendant in second action was not in privity with manufacturer defendant in first action, even though manufacturer agreed to defend and indemnify retailer).  Instead, the cases relied upon by Defendants involve substantively different relationships.  Thus, in *Mars*, 58 F.3d at 619, privity was found between a parent corporation and its wholly owned subsidiary, where the parent exercised complete control over both the subsidiary and the prior litigation and in *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 322 F.3d 1064 (9th Cir. 2003), the court held that individual members of an organization that filed suit on their behalf *may* be bound by the judgment if other conditions are met. Hedstrom does not allege that Target, Toys "R" Us, or Kmart have any such relationships with Hedstrom, or had any such role in the prior litigation.

Finally, there is not a sufficient basis for granting summary judgment to the Retailer Defendants, because Hedstrom has submitted *no admissible evidence* to support its privity claim. There are no declarations that detail the retailers' relationships to Hedstrom, or their roles (if any) in controlling the prior litigation or, for that matter, on any other issue.  Since no evidence has been submitted to support Hedstrom's motion on behalf of the retailers, Hedstrom has not met its burden on a motion for summary judgment.  Rule 56(c), Fed. R. Civ. P.

### F.    Defendants' Post-Judgment Infringement Creates A New Cause Of Action.

In their motion for summary judgment, Defendants do not directly address the consequences of their continuing post-judgment infringing conduct.   In the JumpGuard action, the jury awarded reasonable royalty damages of $13,750.00, which reflected only sales of the JumpGuard model

60272910    Pl's Memo. of Pts. & Auth. In Oppos. to Defs'
Mot. for Partial Summary Judgment          23          *JumpSport, Inc. v. Hedstrom Corp., et al.*
Case No. C 04-0199 PJH

1    through August 23, 2003.  No damages were sought or awarded for any future sales of infringing

2    enclosures.  (Amatruda Decl., ¶ 18.)[10]  It is undisputed that Defendants have continued to manufacture

3    and sell trampoline enclosures after judgment was entered.  (*See* Amatruda Decl., ¶¶ 12-14.)  These

4    new acts of infringement create a new cause of action, to which claim preclusion has no application.

5         Even if claim preclusion somehow barred JumpSport from receiving damages for Hedstrom's

6    pre-verdict infringement, JumpSport is entitled to recover for all infringing sales of both the

7    JumpGuard and the non-JumpGuard enclosures made after judgment was entered, because a new

8    cause of action is created by Defendants' post-judgment conduct.  *Lawlor v. National Screen Service*

9    *Corp.,* 349 U.S. 322 (1955).  In *Lawlor,* plaintiff had dismissed a prior antitrust action against

10   defendants after a settlement.  Plaintiff then filed a second suit, alleging antitrust injuries and seeking

11   damages for the time period after the dismissal, based on the same conduct alleged in the first action

12   and some new conduct.  The Supreme Court held that the second action was not barred by claim

13   preclusion.  "That both suits involved 'essentially the same course of wrongful conduct' is not decisive.

14   Such a course of conduct - - for example, an abatable nuisance -- may frequently give rise to more

15   than a single cause of action."  *Id.* at 327-328.  *See also Frank v. United Airlines, Inc.,* 216 F.3d 845,

16   851 (9th Cir. 2000) (following *Lawlor* to hold that "a claim arising after the date of an earlier

17   judgment is not barred, even if it arises out of a continuing course of conduct that provided the basis

18   for the earlier claim").  Moreover, the purposes of claim preclusion were not furthered by applying it

19   to give defendant immunity from future liability, particularly if there was a public policy interest at

20   stake.  *Lawlor* at 329; *see also International Techs. Consultants, Inc. v. Pilkington*, *PLC*, 137 F.3d

21   1382, 1388 (9th Cir. 1998).

22        The case of *Williams v. Gillette Co.,* 887 F. Supp. 181 (N.D. Ill. 1995) applied *Lawlor* to a

23   patent infringement matter.  Plaintiff sued Gillette for patent infringement, and dismissed the case with

24   _____

25   [10]  Because the damages in the JumpGuard action were based on Hedstrom's accounting records that
     were current through August 2003, JumpSport is entitled to recover damages beginning after that date.
26   (Amatruda Decl. ¶ 18.)  *The Singer Co. v. Skil Corp.,* 803 F.2d 336, 343 (7th Cir. 1986) (second action
     not barred by claim preclusion, and damages in the second action accrued as of the date through which
27   accounting records were produced, even though trial and judgment were later).

28

1  prejudice after a settlement.  Plaintiff subsequently filed a second infringement action against the same

2  devices, alleging infringement and seeking damages for the time period beginning after the first case

3  was dismissed.  The court held that claim preclusion did not bar the subsequent case, because it

4  addressed the time period after the first action was dismissed and, therefore, did not involve the same

5  cause of action or same transaction:  "*Lawlor* has come to stand for the proposition that res judicata

6  will not bar a subsequent suit based on the same course of conduct as a prior suit if the second suit

7  alleges wrongful behavior occurring after judgment in the first suit."  *Id.* at 183-184.  *See also Zip*

8  *Dee, Inc. v. The Domestic Corp.,* 886 F. Supp. 1427, 1434 (N. D. Ill. 1995); *Auto Acetylene Light Co.*

9  *v. Prest-O-Lite Co.*, 264 F. 810 (6th Cir. 1920).

10          Defendants' position that the judgment in the JumpGuard action forever bars JumpSport from

11  recovering for their ongoing infringing conduct is directly contrary to the holding of *Lawlor* and its

12  progeny that post-judgment infringement is actionable as a new cause of action and that the strong

13  public policy of protecting patent rights should not be negated by awarding an infringer immunity

14  from its conduct through claim preclusion.

15  **IV.     CONCLUSION**

16          For the foregoing reasons, JumpSport respectfully requests that the Court deny Hedstrom's

17  Motion for Partial Summary Judgment.  JumpSport further requests that the Court set a briefing

18  schedule for JumpSport's motion for summary judgment, pursuant to the Court's May 13, 2004 Order.

19  DATED:  August 23 , 2004.                    Respectfully submitted,

20                                              TOWNSEND AND TOWNSEND AND CREW

21

22                                      By:   /s/ CHRISTINE A. AMATRUDA
                                              CHRISTINE A. AMATRUDA
23                                            Attorneys for Plaintiff JUMPSPORT, INC.

24

25

26

27

28