1  BRUCE C. PIONTKOWSKI (SBN 152202)
   ROPERS, MAJESKI, KOHN & BENTLEY
2  80 North First Street
   San Jose, CA  95113
3  Telephone:    (408) 287-6262
   Facsimile:    (408) 918-4501
4
   THOMAS C. O'KONSKI (BBO 377475)
5  JOHN F. McKENNA (BBO 336220)
   KEVIN GANNON (BBO 640931)
6  CESARI and McKENNA, LLP
   88 Black Falcon Avenue
7  Boston, MA 02210
   Telephone:    (617) 951-2500
8  Facsimile:    (617) 951-3927

9  Attorneys for Defendant
   HEDSTROM CORPORATION and Related Parties
10

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  JUMPSPORT, INC., a California corporation, | CASE NO.  C 04-0199-PJH |
| 15           Plaintiff, | **DEFENDANT HEDSTROM CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT** |
| 16  v. | |
| 17  HEDSTROM CORPORATION, a Delaware corporation; KMART CORPORATION, a Michigan corporation; TARGET CORPORATION, a Minnesota corporation; TOYS "R" US-DELAWARE, INC., a Delaware corporation; and DOES 1 through 100, | Honorable Phyllis J. Hamilton |
| 18 | |
| 19 | |
| 20 | |
| 21           Defendants. | |

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

Defendant Hedstrom Corporation ("Hedstrom") submits this reply to Plaintiff JumpSport, Inc.'s Memorandum of Points and Authorities in Opposition to Defendants' Motion for Partial Summary Judgment ("Opposition").

In its Opposition, JumpSport, in a desperate attempt to avoid the consequences of its own actions in the First Action, distorts the clear facts[1] and clear law regarding claim preclusion. As has been its practice throughout this litigation, JumpSport makes contradictory and inconsistent arguments in its Opposition to suit its needs *du jour*.

Specifically, during its briefing and oral argument in opposition to Hedstrom's motion to preclude JumpSport from introducing evidence at trial in the First Action regarding its infringement claims against Hedstrom's non-JumpGuard enclosure products, JumpSport repeatedly and strenuously argued that **the non-JumpGuard enclosures were always part of the First Action.** It explained that Hedstrom provided full discovery regarding the non-JumpGuard enclosures, that the parties throughout the First Action operated as if the non-JumpGuard enclosures were accused, and that expert opinions were rendered regarding all of Hedstrom's enclosures, including the non-JumpGuard enclosures. JumpSport's argument was successful given the Court's indication in its November 14, 2003 bench ruling that it would have found good cause if JumpSport had moved to amend its infringement contentions when JumpSport first became aware of their limitations.

Now, in its Opposition, JumpSport argues unabashedly that **the non-JumpGuard enclosure products were not part of the First Action**, preventing the Court from finding claim preclusion. This argument should be soundly rejected. JumpSport should be judicially estopped from now arguing that the non-JumpGuard enclosures were not part of the First Action.

Similarly, in the Complaint and First Amended Complaint in this action, JumpSport contends that **the non-JumpGuard enclosure products are sufficiently similar to the JumpGuard enclosure products** that were found to be infringing in the First Action for

---

[1] JumpSport admits substantially all of the Undisputed Facts that establish that claim preclusion applies as a matter of law. Attached hereto as Exhibit A is a chart, which summarizes JumpSport's admissions.

1  Hedstrom to be collaterally estopped from arguing that the non-JumpGuard enclosures do not
2  infringe the JumpSport patents. Now that JumpSport is faced with a clear case of claim
3  preclusion, it argues that **the non-JumpGuard enclosures and JumpGuard enclosures are**
4  **substantially different** and that claim preclusion is thus avoided. Again, this argument should be
5  soundly rejected. JumpSport should be judicially estopped from now contending that the non-
6  JumpGuard enclosures are sufficiently different from the JumpGuard enclosures to avoid claim
7  preclusion.
8       As discussed in detail below, none of the cases cited by JumpSport support its position; all
9  of the cases cited by JumpSport are clearly distinguishable on their facts. JumpSport had a full
10 and fair opportunity to litigate its patent infringement claims against **all** of Hedstrom's enclosure
11 products in the First Action. It did not, through no fault of Hedstrom. Therefore, this action is
12 barred by the claim preclusion aspects of *res judicata*, to the extent that it seeks to implicate any
13 enclosure products made or sold by Hedstrom, or by any of Hedstrom's retail customers, that are
14 the same or essentially the same as the non-JumpGuard enclosure products that Hedstrom made
15 and sold during the pendency of the First Action.

16     **A.**    <u>**The Cases Cited By JumpSport's Do Not Support Its Position and Are**</u>
17          <u>**Distinguishable on Their Facts**</u>

18      JumpSport contends that Federal Circuit precedent holds that claim preclusion does not
19 bar a second infringement action when the second action is directed to different models or devices
20 than the models or devices that were the subject of a first action. JumpSport mischaracterizes
21 these cases. While JumpSport's contention may be true in circumstances where the second action
22 accuses **new and subsequently developed models** that were not available during the pendency of
23 the First Action, it is not the case for models that were available during the first action.
24      In *Pfaff v. Wells Electronics, Inc.*, 5 F.3d 514, 516 (Fed. Cir. 1993), cited by JumpSport in
25 its Opposition at 9-10, the second infringement suit involved alleged infringement by
26 subsequently developed devices that were not before the Court in the first action and were shown
27 to differ from the devices previously litigated. *Id. at* 516. Because the devices accused in the
28 second action were developed after the trial in the first action, the Federal Circuit held that these

SJ/314751.1/LT2                   - 2 -                 **DEFENDANT HEDSTROM'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT / CASE NO. C 04-0199-PJH**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

devices were never before the court and were thus not subject to claim preclusion. *Id.*

Unlike the situation in *Pfaff*, with the exception of one new trampoline enclosure product, the Kogee enclosure[2], first marketed by Hedstrom after entry of the verdict in the First Action, the accused enclosure products in this action are the same or essentially the same as those accused in the First Action. Thus, JumpSport already had a full and fair opportunity to litigate its patent infringement claims against **all** of Hedstrom's enclosure products in the First Action.

*Del Mar Avionics, Inc. v. Quentin Instrument Co.*, 836 F.2d 1320, 1324 (Fed. Cir. 1987), cited by JumpSport in its Opposition at 10, is also completely distinguishable on its facts. In *Del Mar*, the Federal Circuit held that: "[a] device not previously before the court, and shown to differ from those structures previously litigated requires determination on its own facts." *Id.* In *Del Mar*, the accused device in the second action, the Type B model was not known to the plaintiff during the pendency of the first action. *Id.* While information related to defendant's Type B model was within the scope of plaintiff's discovery requests, defendant never produced any information related to the Type B models during the course of discovery in the first action. *Id.* Moreover, the Type B model was shown to be substantially different than the previously litigated devices because it utilized an entirely different circuitry. *Id.*

Here, JumpSport admitted that the non-JumpGuard enclosures were before the Court during the First Action in its arguments in opposition to Hedstrom's motion to preclude JumpSport from introducing evidence at trial in the First Action regarding its infringement claims against Hedstrom's non-JumpGuard enclosure products. Gannon Dec., Exh. P, at 12:8-10; 12:15-16; 13:2; 404:20-25; Exh. R. JumpSport also admitted that it received full fact discovery from Hedstrom in the First Action regarding all of Hedstrom's enclosure products, including the non-JumpGuard enclosures. Opp. at 4:20-24. It is only after the Court foreclosed JumpSport from introducing evidence at trial in the First Action regarding Hedstrom's non-JumpGuard enclosure

---

[2] At page 7 of its Opposition, JumpSport seems to question the veracity of Hedstrom's representations concerning the Kogee Combo trampoline enclosure. The product number for the Kogee trampoline enclosure is 10385. The 103857 product number is also for the Kogee trampoline enclosure but the 7 added represents that this Kogee model was made specifically for Toys R Us and the only difference is the color combination used.

products, that JumpSport proffers the contradictory argument that the non-JumpGuard enclosures were never before the Court in the First Action.

JumpSport further contends in its Opposition that the *Del Mar* case stands for the proposition that claim preclusion requires "strict identity of claims," meaning that the devices previously litigated must be identical to the device at issue in the second action in order for res judicata to apply. (Opp. Br. at 10). In support of its contention, JumpSport cites *Unique Coupons v. Northfield Corp.*, 2000 WL 343225 (N.D. Ill. 2000). The *Unique Coupons* case is again clearly distinguishable. The device at issue in the second action in the *Unique Coupons* case was defendant's "next generation coupon inserter, Model 3200." Like the case in *Pfaff*, the accused device in the second action in the *Unique Coupons* case was a subsequently developed device that was not even in existence during the pendency of the first action.

More importantly, the *Unique Coupons* case is not the best authority in this district for the proposition that JumpSport contends it supports. It is curious why JumpSport would choose to cite the *Unique Coupons* case from the Northern District of Illinois, when a more recent case from the Northern District of California rejected this interpretation of the *Del Mar* case adopted in *Unique Coupon*. *See Home Diagnostics Inc. v. Lifescan, Inc.*, 120 F.Supp.2d 864 (N.D. Cal. 2000). In *Home Diagnostics*, the district court expressly rejected the interpretation advanced by JumpSport that claim preclusion requires that the devices previously litigated must be identical to the device at issue in the second action. *Id.* Instead, the court held that **only the pertinent structures in the two devices needed to be identical** for collateral estoppel to apply. *Id.* Thus, if a structure in a device is found to be identical to a structure in an otherwise different, previously litigated device, the judgment as to whether that structure meets a particular element of a patent claim must apply to the later litigation to avoid repetitive litigation of the same issues. *Id.* In addition, the patentee in *Home Diagnostics*, like JumpSport here, argued to the court on several occasions that there were no significant differences between the two devices at issue in the first and second actions.

The pertinent structures in the JumpGuard and non-JumpGuard products are identical. In fact, the only real difference between the two products is that in the JumpGuard products, the

1   parts of an enclosure are sold along with the parts of a trampoline, while in the non-JumpGuard
2   products, only the parts for an enclosure are sold. In both cases, the parts are sold in unassembled
3   form. In the First Action, JumpSport argued that the fact that enclosure only products (i.e. the
4   non-JumpGuard enclosures) were sold without trampolines was irrelevant to the infringement
5   determination because they were intended to be used on a trampoline by a customer.
6         Moreover, in its Complaint and First Amended Complaint in the Second Action,
7   JumpSport contends that the non-JumpGuard enclosure products are sufficiently similar to the
8   JumpGuard enclosure products that were found to be infringing in the First Action for Hedstrom
9   to be collaterally estopped from arguing that the non-JumpGuard enclosures do not infringe the
10  JumpSport patents. JumpSport should be judicially estopped from now contending that the
11  JumpGuard and non-JumpGuard enclosure products are materially different.
12        JumpSport's reliance on *Young Engineers, Inc. v. United States Int'l Trade Comm'n*, 721
13  F.2d 1305, 1313-14 (Fed. Cir. 1983) is also misplaced. In *Young Engineers*, the first suit was
14  dismissed with prejudice and a second action was brought before the International Trade
15  Commission ("ITC"). Between the time that the first suit was dismissed and the second action
16  before the ITC, the defendant had introduced eight (8) new models that were not accused of
17  infringement in the first suit. Since the eight models were subsequently developed, they were
18  never before the court in the first suit.
19        Similarly, *Williams v. Gillette Co.*, 887 F.Supp. 181 (N.D. Ill. 1995), does not support
20  JumpSport's position that a second suit can be brought to recover damages based on a product
21  that was the subject of a first action but as to which no relief was entered. In *Williams*, the first
22  infringement suit settled and the second suit sought damages from date of the settlement forward.
23  An issue in the case was whether the settlement agreement included a paid-up license going
24  forward. No such issue is involved here. Indeed, a fairly recent case from the Northern District
25  of California, *Scimed Life Sys. v. Advanced Cardiovascular Sys., Inc.*, 51 U.S.P.Q.2d 1221, (N.D.
26  Cal. 1999), has characterized *Williams* as presenting an extreme set of facts.
27        Finally, JumpSport cites *Brown v. Felson*, 442 U.S. 127, 132 (1979) for the proposition
28  that res judicata should not be applied to bar a cause of action without careful scrutiny because res

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1  judicata may govern grounds and defenses not previously litigated.  This is precisely the point.

2  Just because JumpSport was precluded from introducing evidence at trial in the First Action

3  regarding its infringement claims against Hedstrom's non-JumpGuard enclosures, these claims

4  were part of the First Action, could have been and were in fact made therein, and are barred by

5  res judicata.  After careful scrutiny, this case in fact screams out for the invocation of res judicata.

6   **B.     Hedstrom Never Conceded That JumpSport Had The Right to Second
             Infringement Action Against Non-JumpGuard Enclosure Products**
7

8  In its Opposition, JumpSport contends that Hedstrom, in its opposition to JumpSport's

9  motion for reconsideration of the Court's November 5, 2003 ruling, conceded that JumpSport

10  could bring a second infringement action against Hedstrom's non-JumpGuard enclosures.

11  Nothing could be further from the truth.

12  In its opposition to JumpSport's motion for reconsideration, Hedstrom specifically stated

13  that:

14  > "**In its letter brief, JumpSport contends**, and cites case law
   > supporting its contention **that it will still be able to proceed
15  > against Hedstrom in a subsequent suit** if it cannot add
   > infringement allegations relating to Hedstrom's non-JumpGuard
16  > products in this case.  Goldsmith, at pp. 4-5.  **If this is true**, then a
   > denial of JumpSport's request will neither lead to a windfall for
17  > Hedstrom nor prejudice JumpSport in any significant way.

18  Gannon Dec., Exh. S (emphasis added).

19  Hedstrom simply responded to JumpSport's argument and asserted that if JumpSport's

20  argument was correct, JumpSport would not be barred from proceeding with a second

21  infringement action.  Hedstrom did not itself concede that a second suit could be brought.  The

22  law and facts, as articulated in Hedstrom's Motion, clearly establish that JumpSport's argument is

23  not correct.

24  JumpSport also asserts that Hedstrom is seeking to receive a windfall, a free pass to

25  infringe JumpSport's patents.  If, as JumpSport argues, Hedstrom received a windfall when this

26  Court precluded JumpSport from introducing evidence regarding its infringement claims against

27  Hedstrom's non-JumpGuard enclosure products in the First Action, then JumpSport also received

28  a windfall when the Court granted JumpSport's motion *in limine* to exclude testimony concerning

1   the prior art trampoline enclosures developed and offered for sale by Rolland Wayne Rich (the
2   "Rich enclosures"). Hedstrom contended that the Rich enclosures invalidated most if not all of
3   the asserted patent claims. Since Hedstrom was precluded from introducing evidence concerning
4   the Rich enclosures at trial, Hedstrom cannot just file another lawsuit seeking to have the
5   JumpSport patents declared invalid in light of the Rich enclosures. Hedstrom's rights with
6   respect to that ruling are limited to the right to argue on appeal that the Court abused its discretion
7   in excluding the Rich prior art. JumpSport's only rights are the same with regard to the non-
8   JumpGuard product preclusion ruling. The situations are completely analogous. Essentially
9   every ruling made for or against a party in litigation affects the interests of the parties in some
10  way.

   **C.   If JumpSport's Current Contentions Are True, Then It Failed to Conduct a Proper Pre-suit Investigation in the First Action**

13  In its Statement of Facts, JumpSport contends that it "was unaware at the time of the
14  initial disclosures [in the First Action] that Hedstrom had two separate and distinct sets of
15  enclosures – those sold under the brand name JumpGuard and those not." This contention is
16  disingenuous at best.
17  Fed. R. Civ. P. 11 requires a party to make a reasonable inquiry to determine whether a
18  complaint is well founded in fact. *Judin v. United States*, 110 F.3d 780 (Fed. Cir.
19  1997)(sanctioning party for only viewing the accused device from a distance and failing to
20  compare the accused devices to claims of the patent or attempting to obtain samples of the
21  accused devices for such a comparison prior to filing suit). Rule 11 does not allow a party to
22  conduct an after-the-fact investigation. *Id.*
23  JumpSport had an obligation to conduct an appropriate pre-suit investigation prior to
24  filing the First Action. It is clear that this never happened. Had JumpSport performed a proper
25  investigation, prior to suing not only Hedstrom but its retail customers, Hammacher, Schlemmer
26  & Co., Inc., Amway, Inc. and Wal-Mart Stores, Inc., in the First Action, as required by Fed. R.
27  Civ. P. 11, it would have been aware that Hammacher, Schlemmer and Amway sold only
28  Hedstrom's JumpGuard enclosure products, while Wal-Mart Stores sold only Hedstrom's non-

JumpGuard enclosure products.[3]

Similarly, JumpSport's suggestion in its Opposition that the Kogee enclosures infringe one or more claims of the JumpSport patents is not only irrelevant because Hedstrom admitted that claim preclusion does not apply to these enclosures, but raises similar questions regarding JumpSport's compliance with Rule 11. (Opp. at 12). JumpSport admits that it has only viewed the Kogee enclosure on Hedstrom's web site. It is apparent that JumpSport has never compared the Kogee enclosure to claims of its patents or obtained samples of the Kogee enclosure for such a comparison prior to making its cavalier accusation.

Suffice it to say that the Kogee enclosures were specifically designed to avoid infringement of any valid claim of the JumpSport patents. Hedstrom is confident that its Kogee enclosure does not infringe any valid claim and that JumpSport will concede as much once it takes the time to inspect the enclosure. If JumpSport insists on pursuing its infringement claims against the Kogee enclosures, that is its prerogative. The fact remains that its claims against Hedstrom's non-JumpGuard enclosures are barred by res judicata.

### D. The Prejudice to Hedstrom Outweighs Any Prejudice to JumpSport.

JumpSport argues that the prejudice to it if claim preclusion is found far outweighs any possible prejudice to Hedstrom. This again is not the case. JumpSport never put forth any evidence during the trial in the First Action that any of the accused enclosures were assembled and used on trampolines. In the Court's Order Denying Certain Post-Trial Motions; Granting Certain Post-Trial Motions Requesting Additional Briefing Re non-Infringement, this Court invited JumpSport and Defendant Jumpking Inc. ("Jumpking") to submit supplemental briefs referencing the trial evidence, if any, regarding whether Jumpking sold combination units of its Funring 1 model. The Court noted that the evidence supports a finding that Hedstrom sold unitized devices, which include both an enclosure and a trampoline, and consequently did not invite Hedstrom to participate in that briefing.

---

[3] In the First Action, Wal-Mart Stores, Inc., Hammacher, Schlemmer & Co., Inc. and Amway, Inc. were sued along with Hedstrom only because they sold enclosures manufactured by Hedstrom. Gannon Dec., Exh. C.

1    Even though it is true that the evidence shows that Hedstrom's JumpGuard was a so-called
2    unitized or combination model, in that it included, when sold, the parts for both a trampoline and
3    an enclosure, the evidence also shows the JumpGuard units were sold by Hedstrom in a
4    disassembled state. Hedstrom is confident that JumpSport never introduced any evidence at trial
5    that the JumpGuard parts were ever actually assembled by anyone. In fact, JumpSport's expert
6    Dr. Velinsky conceded on cross-examination that he never assembled a Hedstrom enclosure on a
7    trampoline or inspected a Hedstrom enclosure so assembled. (Tr. at 1240:18 – 1242:18). Thus,
8    Hedstrom believes there is no evidence in the record of the First Action that Hedstrom's
9    JumpGuard units included a "rebounding mat <u>coupled</u> to the frame," or "flexible material <u>coupled</u>
10   to said independent poles and to the rebounding mat," as required by the '845 patent claims. '845
11   patent col. 20:30, 34-36 (emphasis added). Similarly, Hedstrom believes that there is no evidence
12   that the JumpGuard units included "a plurality of posts. . . <u>secured</u> to the trampoline, "a flexible
13   top line <u>that extends</u> between adjacent posts," or "a generally cylindrically wall . . . <u>secured</u> to the
14   wall support portions of the posts," as required by the '207 patent claims. '207 patent col. 20:23,
15   26, 31-32 (emphasis added).

16   Because JumpSport would now have the benefit of hindsight if it were allowed to
17   prosecute this action against the non-JumpGuard enclosure products that it could have accused,
18   and did accuse, in the First Action, there is no question that it would be in a position in this action
19   to better tailor its presentation of evidence at a second trial. Hedstrom would thus be prejudiced
20   if JumpSport is allowed "a second bite at the apple" in regard to the non-JumpGuard enclosures
21   that were part of the First Action.

22   As for the alleged prejudice to JumpSport, all of the arguments of prejudice to JumpSport
23   raised in its Opposition were raised by JumpSport's counsel prior to the Court's denial of
24   JumpSport's motion for reconsideration. From its arguments, JumpSport would have the Court
25   believe that it was somehow Hedstrom's duty to apprise it that JumpSport's infringement
26   contentions were limited to the JumpGuard enclosures. It clearly was not, and the Court noted
27   this in its bench ruling denying the request for reconsideration. Gannon Dec., Exh. P at 1212: -
28   1215:3.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1   In fact, Hedstrom's counsel did advise JumpSport's counsel on at least three separate
2   occasions prior to the start of trial in the First Action that JumpSport's infringement contentions
3   were limited to Hedstrom's JumpGuard enclosure products. For reasons known only to
4   JumpSport and its counsel, JumpSport ignored that advice and chose not to seek leave to amend
5   its contentions on a timely basis. The predicament in which JumpSport finds itself is of its own
6   making.

### E. JumpSport Should Be Judicially Estopped From Advancing Inconsistent and Contradictory Arguments

Judicial estoppel prevents a party from taking an inconsistent position after the court acted on a prior position. *New Hampshire v. Maine*, 532 U.S. 742 (2001). JumpSport should be estopped from now arguing that the non-JumpGuard enclosures were never before the Court in the First Action.

Throughout its Opposition, JumpSport argues that **Hedstrom's non-JumpGuard enclosures were not part of the First Action.** However, JumpSport admits that "in the pretrial submissions, JumpSport asserted that its claims encompassed all of Hedstrom's enclosure models, not just the JumpGuard model. Opp. at 3:24 – 4:3. In addition, during briefing and oral argument in opposition to Hedstrom's motion to preclude JumpSport from asserting its infringement claims against Hedstrom's non-JumpGuard enclosures in the First Action, JumpSport vehemently argued that **the non-JumpGuard enclosures were part of the First Action.** Gannon Dec., Exh. P, at 12:8-10; 12:15-16; 13:2; 404:20-25; Exh. R. JumpSport also admits that it received full fact discovery from Hedstrom regarding all of its enclosure products including the non-JumpGuard enclosure products. Opp. at 4:20-24. By its own admission, JumpSport initially accused **all** of Hedstrom's trampoline enclosure products, not just Hedstrom's JumpGuard brand enclosure products, of infringing its '845 and '207 patents in the First Action. JumpSport, in other words, has conceded that non-JumpGuard models were properly before the Court in the First Action. JumpSport should be judicially estopped to deny this today simply to avoid the challenge at hand.

In its Opposition, JumpSport further contends that **the JumpGuard and non-JumpGuard enclosures are "different devices."** (Opp. at 11). JumpSport should also be

1  judicially estopped from arguing that these products are different.  In open court and in its motion
2  for reconsideration JumpSport repeatedly argued that the products were substantially similar.
3  Moreover, in its First Amended Complaint in this action, JumpSport specifically alleged that "the
4  JumpGuard unit possesses essentially the same features as other Hedstrom trampoline enclosure
5  products."  Gannon Dec., Exh. V ¶ 21.  JumpSport also alleged that "the jury's verdict in the First
6  Infringement Action, which found that a Hedstrom enclosure with essentially the same features
7  infringed the JumpSport patents."  Gannon Dec., Exh. V ¶ 26.

8        The only difference that JumpSport can articulate, and that is at all relevant, is that the
9  JumpGuard is sold with a trampoline.  The only difference between the JumpGuard and non-
10 JumpGuard enclosures is insubstantial.  Because JumpSport argues that Hedstrom should be
11 collaterally estopped from arguing that its non-JumpGuard enclosures do not infringe the
12 JumpSport patents because they allegedly contain many of the same elements that were found
13 infringing in the JumpGuard enclosure, JumpSport should be judicially estopped from contending
14 that the enclosures are sufficiently different to avoid claim preclusion.

15     **F.  There Is the Requisite Privity Between the Parties Accused in This Action and Those Accused in the First Action**

17       JumpSport seeks to escape the binding effect of the judgment in the First Action on the
18 basis of an alleged lack of identity of parties.  The only reason the retailer defendants have been
19 included in this action is because they sell trampoline enclosures manufactured by Hedstrom.
20 The jury in the First Action found no retailer liability.  Despite this finding, JumpSport instituted
21 this action against Hedstrom and two new retailers that were not included as named defendants in
22 the First Action.  Furthermore, the jury in the First Action found that JumpSport was entitled only
23 to a reasonable royalty for the infringement of its patents.  When patent damages are based on a
24 reasonable royalty, as here, that royalty can be assessed only once per unit, i.e., it cannot to be
25 assessed against each successive infringer.  *Aro Manufacturing Co. v. Convertible Top*
26 *Replacement Co.,* 377 U.S. 476, 502 (1964)( a reasonable royalty is not to be separately
27 calculated against each successive infringer.); *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1562 (Fed.
28 Cir. 1983); s*ee also, Wagner Sign Serv. v. Midwest News Reel Theatres*, 119 F.2d 929, 930 (7th

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

Cir. 1941)(where a patentee has been fully compensated by an infringing manufacturer for the manufacture and sale of the infringing device, the patentee has no recourse against a customer of such infringing manufacture). Moreover, JumpSport's argument that there is no privity because it is entitled to recover damages from the retail defendants separate and apart from Hedstrom is unfounded.

## CONCLUSION

For all of the reasons set forth above, Hedstrom's Motion for Partial Summary Judgment of Non-infringement should be granted. The Court should rule that this action is barred to the extent that it seeks to implicate enclosures made or sold by Hedstrom, or by any of Hedstrom's retail customers, that are the same or essentially the same as the non-JumpGuard enclosures made and sold by Hedstrom during the course of the First Action.

Dated: September 7, 2004

Respectfully submitted,

Cesari and McKenna, LLP
THOMAS C. O'KONSKI
KEVIN GANNON


Ropers, Majeski, Kohn & Bentley
BRUCE C. PIONTKOWSKI


By: /s/ Bruce C. Piontkowski
    BRUCE C. PIONTKOWSKI
    Attorneys for Defendant / Counterclaimant
    Hedstrom Corporation